Christine A. MILCHERSKA,
Appellant–Petitioner,

v.

James A. HOERSTMAN, Appellee–
Respondent.

No. 71A03–1509–JP–1640.

Court of Appeals of Indiana.

June 8, 2016.

Ordered Published June 28, 2016.

... Laura M. Longstreet, Longstreet Law, LLC, South Bend, IN, Attorney for Appellant.

Michael K. Wandling, Anna D. Saar, Wandling & Associates, South Bend, IN, Attorneys for Appellee James Hoerstman.

Mark F. James, Anderson, Agostino & Keller P.C., South Bend, IN, Attorneys for Appellee Guardian–Ad–Litem.

## Case Summary

BRADFORD, Judge.

[1] Appellant–Petitioner Christine Milcherska ("Mother") and Appellee–Respondent James Hoerstman ("Father") have had shared custody of their child, A.H., since the child's birth in 2004. In 2015, Mother accepted a new job in Texas and filed a notice of intent to relocate with the child. Father objected to Mother's motion and petitioned for a modification of custody so the child could remain in Indiana with him throughout the school year. After three evidentiary hearings, the probate court denied Mother's request to relocate and granted Father primary physical custody and sole legal custody of the child. In reaching this conclusion, the probate court credited the testimony of the guardian ad litem and the child's therapist who agreed that staying in Indiana with Father was in the child's best interest. The child, who was eleven at the time of the final hearing, wished to stay with Father, and the probate court gave significant weight to her wishes.

[2] On appeal, Mother argues that (1) there is insufficient evidence that relocation was not in the child's best interest, (2) the probate court erred by giving too much consideration to the child's wishes, (3) the probate court erred by failing to issue written findings of fact and conclusions, and (4) there is insufficient evidence to support the grant of sole legal custody to

Father. In addition to responding to Mother's claims, Father argues that the probate court erred by declining to award him attorney's fees. We affirm the probate court in all respects.

### Facts and Procedural History

[3] Mother and Father have one child together, A.H., who was born on March 29, 2004. In the order establishing paternity, the probate court ordered that Mother be given "care, custody and control of [the] child." Father's app. pp. 16–17. The parties cohabited until Father moved out of the family home in 2006. At that time, the probate court ordered the parties to equally split parenting time with the child. In 2014, the parties entered mediation regarding custody of the child which resulted in an agreed order that the parties would exercise parenting time with the child on alternating weeks. Due to Mother travelling for work, Father exercised slightly more parenting time than Mother.

[4] In 2015, Mother accepted a new job which required her to move to Brownwood, Texas. On March 13, 2015, Mother filed a notice of intent to relocate. Father objected to Mother's relocation and requested a preliminary injunction and the appointment of a guardian ad litem ("GAT"). After a hearing on June 9, 2015, the probate court issued a temporary order which (1) permitted Mother to relocate with the child, (2) ordered the parties to exchange the child bi-weekly, (3) ordered Mother to pay the cost of transportation, (4) appointed Mark James to serve as GAT, and (5) set an evidentiary hearing for August 25, 2015 ("the final hearing").

[5] On July 21, 2015, Father filed a motion requesting that the probate court order Mother to pay his attorney's fees based on the disparity in the parties' incomes.[1] On August 17, 2015, GAL James filed a motion for temporary restraining order requesting that the child remain in Indiana with her Father until after the final hearing and order so that she could begin school in the same school district she had previously attended. The probate court heard argument on the motion on August 19, 2015 before granting the motion.

[6] At the final hearing, the probate court heard testimony from the child's therapist, Toni Henke–Wheeler, who began treating the child for anxiety in 2012. Henke–Wheeler testified that the child has positive relationships with and loves both parents but was suffering from increased anxiety due to the potential move to Texas. Specifically, the child reported being significantly more anxious when staying with Mother due in large part to Mother's relationship with step-father, "because her mom changes inside those relationships," and because "her mom had been married and divorced four times, that this relationship was going to be the fifth and that she didn't trust that it would last." Final Hearing Tr. pp. 20, 28. Henke–Wheeler also testified that "[A.H.] is emotionally more connected at this juncture in her life to [Father]," and it is in A.H's best interest to remain in Indiana with Father. Final Hearing Tr. p. 13. GAL James reiterated much of Henke–Wheeler's sentiment during his testimony, stating that A.H. "gets her emotional stability from her father," her home life in Texas has caused anxiety, and it is in her best interest to stay with Father in Indiana. Final Hearing Tr. p. 45. GAL James also testified that A.H. is very bright and mature, is

---

1. Mother testified that she made approximately $120,000 per year and while Father's specific income is not in the record, it appears to be significantly less than Mother's. Mother estimated Father's income was $1000 a month and Father stated that he earns a gross income of less than twenty percent of Mother's.

very comfortable at her Mishawaka school, and has many close friends and family in the Mishawaka community.

[7]   At the conclusion of the final hearing, the probate court orally entered judgment and made the following findings: (1) the child loves both of her parents, (2) there was no evidence of alienation by either parent, (3) the testimony of the child's therapist was highly credible and reasonable, (4) the child wishes to stay in Indiana with Father, (5) the child is very intelligent and mature for her age, (6) the child's wishes should be given significant consideration, (7) moving to Texas with Mother is not in the child's best interest, and (8) the child's emotional health is better accommodated being with Father. The probate court then denied Mother's request to relocate with the child and granted Father sole legal custody and primary physical custody, with Mother to exercise parenting time pursuant to the Indiana Parenting Time Guidelines when distance is a factor.

### Discussion and Decision

[8]   On appeal, Mother makes the following arguments: (1) there is insufficient evidence to conclude that relocation is not in the child's best interest, the (2) probate court erred by giving too much weight to the child's wishes, (3) the probate court erred by failing to enter findings of fact or conclusions of law, and (4) there is insufficient evidence to support the award of sole legal custody to Father.

[9]   Because the probate court did not issue findings of fact, we apply the general judgment standard of review.

> In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence. Judgments in custody matters typically turn on essentially factual determinations and will be set aside only when they are clearly erroneous. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine.

*Baxendale v. Raich,* 878 N.E.2d 1252, 1257–58 (Ind.2008) (citations and quotations omitted). "Trial courts are afforded a great deal of deference in family law matters, including relocation and custody disputes." *D.C. v. J.A.C.,* 977 N.E.2d 951, 954 (Ind.2012).

### I.   Sufficiency of the Evidence to Deny Mother's Request for Relocation and Modify Physical Custody

[10]   When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. Ind. Code § 31–17–2.2–1(b); 31–17–2.2–5(a). When this objection is made, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31–17–2.2–5(c). If the relocating parent shows good faith and a legitimate reason, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." *Id.* § 31–17–2.2–5(d).

*D.C.,* 977 N.E.2d at 954. Father does not dispute that Mother met her burden of proof that her relocation was made in good faith and for a legitimate reason. Father argues, and the probate court found, that relocation is not in the best interest of the child. Mother argues that the probate court's finding in this regard is clearly erroneous.

[11] Upon a motion for relocation by a parent, a probate court is obligated to consider certain factors in determining whether to grant the motion or modify custody.

(b) Upon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind. Code § 31–17–2.2–1. The Indiana Supreme Court has held that "other factors affecting the best interest of the child" include the statutory factors used in custody determinations listed in Indiana Code section 31–17–2–8 ("Section 8 factors").[2]

## A. Wishes of the Child

[12] Mother asserts that both her and Father are responsible, loving parents who enjoy close relationships with A.H. and are both well-equipped to care for her. Accordingly, Mother contends that the factors to be weighed in determining the best interest of the child are in equipoise, i.e., "[t]hey do not tip the balance one way or the other with respect to which parent should be awarded physical custody." Mother's Br. p. 16. Mother further contends that "The problem in this case, is that all of the distinguishing evidence pre-

2. "The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter."

Ind. Code § 31–17–2–8.

sented, focused on A.H.'s wishes." *Id.* at 16–17. At the close of the final hearing, the probate court found that "the child's wishes should be accorded greatly here." Final Hearing Tr. p. 136. Mother argues that the probate court should have given less consideration to the child's wishes because she was only eleven years old at the time of the hearing and the Section 8 factors provide that more consideration should be given to the child's wishes if the child is at least fourteen years old.

[13] In *Sabo v. Sabo,* we addressed a similar situation in which a trial court awarded mother primary custody of her eleven-year-old child after the child expressed her desire to be placed with her mother, who had accepted a new officer position with the Air Force which required her to move to Germany. 858 N.E.2d 1064, 1070 (Ind.Ct.App.2006). The child's father, who had previously held primary physical custody, made the same argument that Mother makes in the case at bar; that the trial court placed too much emphasis on the child's wishes. *Id.* On appeal, we noted that both parents were equally well-equipped to provide for the child and the child would do well regardless of which parent was granted custody. As such, we found that the trial court did not err in considering the child's wishes to be the appropriate determining factor because the other statutory factors placed before the trial court were in equipoise. *Id.* at 1071. In reaching this conclusion, we also noted that "[t]his case is as good an illustration as any of the reason that we accord latitude and deference to a trial court's custody determinations." *Id.*

■ [14] Mother concedes that there are "striking similarities between *Sabo* and the case before the court...." Mother's Br. p. 22. The child here is also an eleven-year-old girl whose Mother has accepted a job in a very distant location. Mother acknowledges that both Mother and Father are well-equipped to care for the child, "[t]he evidence strongly suggested that A.H. would do well regardless of which parent was granted physical custody," and "[m]ost of the [ ] relevant factors placed before the trial court are in equipoise." Mother's Br. p. 16. Even without considering Father's arguments that the factors weighed against relocation, the only distinguishing fact Mother draws from *Sabo* is that A.H. wishes to stay with her father and that, "according to *Sabo*, typical wishes of a child approaching adolescence[ ] is to live with the parent of the same sex." Mother's Br. p. 22. However, determining the typical wishes of a similarly situated child is not a statutory factor. Additionally, in *Sabo*, we did not find that it was better for a child to be placed with the parent of the same sex; rather, the child in that case explained that she preferred to live with her mother for that reason. Accordingly, we find that, in light of our decision in *Sabo*, Mother's argument must fail.

[15] Additionally, we note that the probate court's decision to give more consideration to the child's wishes was not arbitrary. In support of this decision, the probate court stated that, after conducting an in-camera interview with the child, it "found the child to be very intelligent, even precocious as [GAL] James said, intelligent and mature beyond her years. It's especially striking in her personal stature." Final Hearing Tr. p. 137. Mother argues that a child's wishes should be given less consideration if they are under fourteen regardless of their maturity level or intelligence. However, we see no reason why, in addition to considering their age, a probate court cannot give a child's wishes more or less consideration based on additional factors, such as the child's maturity level, intelligence, emotional health,

and the reasons for the child's wishes. GAL James testified that he has "met some fourteen year olds who are not as mature as she is." Final Hearing Tr. p. 46. To consider only a child's age and ignore other relevant factors and motivations when weighing a child's wishes is plainly irrational.

## B. Factors Relevant to Determining the Best Interests of the Child

[16] Despite Mother's arguments that the statutory factors are in equipoise, the probate court did not find as such and did not base its decision solely on the child's wishes. The probate court found that "uprooting" the child at a "tender time" was not in the child's best interest and that "the child's emotional health is better accommodated with father." Final Hearing Tr. p. 137. The probate court also noted that the distance of the relocation was over a thousand miles.

[17] Henke–Wheeler testified that the potential move to Texas caused severe anxiety for the child, the child is significantly more anxious when she is with Mother, "she is emotionally more connected at this juncture in her life to [Father]," and it is in the child's best interest for Father to have primary physical custody. Final Hearing Tr. p. 13. Henke–Wheeler diagnosed the child with Generalized Anxiety Disorder and Adjustment Disorder with Anxiety, the latter being "directly connected to this move [to Texas]." Final Hearing Tr. p. 40. Likewise, GAL James testified that the child "gets her emotional stability from her father," her home life in Texas has caused anxiety, she is very comfortable at her Mishawaka school, she has many close friends and family in the Mishawaka community, and it is in her best interest to stay with Father in Indiana. Final Hearing Tr. p. 45.. The probate court specifically credited the testimony of

Henke–Wheeler and GAT James in justifying its order.

■ [18] We reiterate that we "shall not set aside the findings or judgment unless clearly erroneous," and "[f]indings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *D.C.,* 977 N.E.2d at 953. Furthermore, we do not reweigh the evidence or reassess witness credibility. *Id.* at 954. Because there is evidence in the record supporting the probate court's finding that relocation is not in the child's best interest, the denial of relocation and grant of primary physical custody to Father was not clearly erroneous. *See, e.g., Speaker v. Speaker,* 759 N.E.2d 1174, 1179 (Ind.Ct.App.2001) (awarding father physical custody of child if mother moved to another city was not clearly erroneous where both parties were capable and loving parents and child was attached to her home, school, and community).

## II. Findings of Fact & Conclusions of Law

■ [19] Mother next argues that the probate court abused its discretion by failing to "delineate factual findings, the weight assigned to each, and the conclusions as a result." Mother's Br. p. 24. In making a custody determination, probate courts are not required to issue special findings of fact unless requested by a party. *In re Paternity of J.T.,* 988 N.E.2d 398, 400 (Ind.Ct.App.2013); *see also Schenk v. Schenk,* 564 N.E.2d 973, 979 (Ind.Ct.App.1991).

[20] Mother cites to *Green v. Green,* 843 N.E.2d 23 (Ind.Ct.App.2006), *trans. denied,* in support of her argument. In *Green,* a panel of court reversed a trial court's order allowing relocation, finding that the trial court ignored relevant factors. *Id.* at 29. The *Green* court also noted that because "the trial court did not

issue findings in the proceeding below, we cannot be certain as to which of the section 8 factors the trial court considered important." *Id.* at 28.

■ [21] Here, in contrast to *Green*, there is no evidence that the probate court ignored relevant factors and we have sufficient information to ascertain the reasoning behind the probate court's decision. The probate court orally entered judgment at the conclusion of the final hearing and explained which of the Section 8 factors it found most important, including the age of the child, wishes of the child, relationship of the child and her parents, and mental health of the child. Additionally, the probate court credited the testimony of GAL James and Henke–Wheeler, who testified to, among other things, the importance of additional statutory factors such as the child's connection to her home, school, and community; the feasibility of preserving the relationship between the nonrelocating parent (Father) and the child; and the child's relationship with her family. Accordingly, we find that the probate court did not err by failing to enter specific findings of fact.

### III.   Modification of Legal Custody

[22] Mother argues that there was insufficient evidence to support the probate court's award of sole legal custody to Father. When considering a modification from joint legal custody to sole legal custody, we must determine whether there has been a substantial change in one or more of the factors listed in Indiana Code section 31–17–2–15, in addition to considering any substantial change to the Section 8 factors, as is typically necessary for physi-

cal custody modifications.[3] *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1259 (Ind.Ct.App.2010) (citing *Carmichael v. Siegel*, 754 N.E.2d 619, 635 n. 7 (Ind.Ct.App.2001)). In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

Ind. Code § 31–17–2–15.

■ [23] Our courts have reiterated that factor (2), whether the parents are willing and able to cooperate in advancing the child's welfare, is of particular importance in making legal custody determina-

---

**3.**  We note that when one parent is relocating, it is not necessary for a court to find a substantial change in one of the Section 31–17–2–8 factors before modifying physical custody. *D.C.*, 977 N.E.2d at 954. However, our courts have not similarly waived the "substantial change" requirement for legal custody determinations in the event of a parent's relocation.

tions. *Julie C.,* 924 N.E.2d at 1260; *see also Carmichael,* 754 N.E.2d at 635 ("One of the key factors to consider when determining whether joint legal custody is appropriate is whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare."). Where "the parties have made child-rearing a battleground, then joint custody is not appropriate." *Periquet–Febres v. Febres,* 659 N.E.2d 602, 605 (Ind.Ct.App.1995). "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Swadner v. Swadner,* 897 N.E.2d 966, 974 (Ind.Ct.App.2008) (quotation omitted).

[24] As we have discussed, although the child has a good relationship with both parents, she is more emotionally stable with Father, has suffered from severe anxiety in Mother's home as a result of the relocation, and wishes to stay with Father. Additionally, the probate court, and Henke–Wheeler, repeatedly acknowledged the contentious nature of this litigation and the uncooperative behavior of both parents. (Tr. 10–25) Henke–Wheeler specifically testified that the parents had a history of conflict and significant "co-parenting difficulties" which caused A.H. to feel "trapped in the middle" and "manifest[ed] in anxiety for [A.H.]." Final Hearing Tr. pp. 12, 18. It appears that joint legal custody would not be appropriate in light of the parents' ongoing disagreements.

> Even two parents who are exceptional on an individual basis when it comes to raising their children should not be granted, or allowed to maintain, joint legal custody over the children if it has been demonstrated, as here, that those parents cannot work and communicate together to raise the children. *See* Ind. Code § 31–17–2–15(2). The issue in determining whether joint legal custody is appropriate is not the parties' respective parenting skills, but their ability to work together for the best interests of their children. The trial court here was placed in a position of choosing one parent over the other regarding legal custody, because of their inability to communicate and work together, and we cannot say it was clearly erroneous to choose Father.

*Carmichael,* 754 N.E.2d at 636.

[25] Mother attempts to characterize the parties' lack of cooperation as being primarily a result of Father's misconduct; however, this was not the finding of the probate court and so Mother's argument is essentially a request for this court to reweigh evidence, which we cannot do. *Baxendale,* 878 N.E.2d at 1257. Considering the substantial discretion afforded to trial courts in custody determinations, we cannot say the probate court's decision to award sole legal custody to Father was clearly erroneous.

## IV. Attorney's Fees

[26] Father argues that the probate court abused its discretion in denying Father's request for attorney's fees. "A determination regarding attorney fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion." *Martinez v. Deeter,* 968 N.E.2d 799, 810 (Ind.Ct.App.2012). Mother did not respond to Father's argument regarding attorney's fees in her reply brief. Where a party fails to respond to an argument made on appeal, a less stringent standard of review applies, and we may reverse the trial court's order if appellant establishes "prima facie error," which is error at first sight, on first appearance, or on the face of

it. *Thompson v. Thompson,* 811 N.E.2d 888 (Ind.Ct.App.2004).

[27] The probate court could have awarded attorney's fees to either party under Indiana Code sections 31–17–2.2–1(c) and 31–16–11–1.

> In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated.

*Martinez,* 968 N.E.2d at 810 (citations omitted).

[28] In declining to award attorney's fees, the probate court acknowledged that it was required to "examine a number of factors" and felt that the "most relevant" of which was "the parties' relative incomes." Final Hearing Tr. p. 137. In his motion for attorney's fees, Father asserted that Mother earned approximately $120,000 per year and Father earns less than twenty percent of that amount. The probate court found that "[Mother] has made much of her substantial income previously. But it does appear that that income for a while, and now even continuing today, is more tenuous." Final Hearing Tr. p. 138. However, the probate court did order Mother to pay the entirety of the GAL fees.

[29] The probate court also noted that "this litigation has been multiplied, needlessly so" and that the parties could have reached an agreement in mediation. The probate court blamed both parties for the contentious nature of the litigation. "Folks, I was told a while ago that in Criminal Court you have bad people on their best behavior, and in Family Court you have good people on their wors[t]." And frankly, I think that's what I've seen here." Final Hearing Tr. p. 136. Misconduct is a factor in the attorney fee analysis, and Father is not innocent in this regard. The probate court rebuked Father, stating

> Mr. Hoerstman, the—one of two things seems to be true. Either you thought this child was a victim of abuse and didn't report, which is problematic, or, what I think is more likely, you thought this was something relatively minor or an accident ... and you decided to keep that in your pocket until it would be convenient for you. That's reprehensible, sir, it really is.

Final Hearing Tr. p. 136. Based on the probate court's factual finding that Mother's income was not as stable as it had previously been and that Father was at least partly responsible for the contentious and protracted nature of the litigation, we cannot say that the court abused its discretion in declining to award attorney's fees.

[30] The judgment of the probate court is affirmed.

BAILEY, J., and ALTICE, J., concur.

### Order

[1] Appellee, James A. Hoerstman, by counsel, filed an Appellee's Motion to Publish Opinion.

[2] Having reviewed the matter, the Court finds and orders as follows:

1. The Appellee's Motion to Publish Opinion is granted.

2. This Court's opinion heretofore handed down in this cause on June 8, 2016, marked Memorandum Decision, is now ordered published.

3. The Clerk of this Court is directed to send copies of said opinion together with copies of this order to the

West Publishing Company and to all other services to which published opinions are normally sent.

[3] Ordered *6/28/2016*.