## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 07 2018, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Florence Anne Briggs
Briggs Law Office
Flora, Indiana

ATTORNEYS FOR APPELLEE

Amanda R. Blystone
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| **T.A.S.,**<br>*Appellant-Petitioner,*<br><br>v.<br><br>**J.S.,**<br>*Appellee-Respondent* | May 7, 2018<br><br>Court of Appeals Case No.<br>32A01-1709-DR-2193<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Karen M. Love,<br>Judge<br><br>Trial Court Cause No.<br>32D03-1211-DR-753 |

**Crone, Judge.**

## Case Summary

[1] T.A.S. ("Father") appeals a custody modification order awarding primary custody of his three children to their mother, J. S. ("Mother"). He raises

several issues, which are essentially challenges to the admission of certain medical evidence and to the sufficiency of the evidence supporting the custody modification order. Mother cross-appeals, claiming that the trial court used inaccurate parenting time figures in calculating Father's child support obligation. Finding that Father has waived his evidentiary challenge, that the evidence is sufficient to support the custody modification order, and that the trial court erred in calculating Father's weekly child support obligation, we affirm the custody modification and reverse and remand for a recalculation of Father's weekly child support obligation.

## Fact and Procedural History[1]

Mother and Father were married in June 1998 and had three children: C.S., born in 2001; A.S., born in 2004; and M.S., born in 2006 (collectively "the Children"). C.S. takes medicine for asthma, and M.S. takes medicine for chronic acid reflux, from which she has suffered since she was a toddler. Mother and Father's marriage was dissolved in April 2014. Per the agreed custody order, they shared joint legal and physical custody, with parenting time on alternating weeks and opposite Tuesdays. At the time of the dissolution, C.S. and M.S., ages twelve and seven respectively, both suffered "toileting issues," which involved bedwetting and intermittent daytime accidents. Tr. Vol. 2 at 11. The toileting issues have persisted throughout these proceedings.

---

[1] We note that Father's primary and reply briefs violate Indiana Appellate Rule 46 in many respects. For example, the facts section contains argument, the enumerated issues are addressed out of order or not at all in the argument section, and the arguments are at times incoherent.

The dissolution decree required that the Children participate in counseling, that Mother and Father alternate taking the Children to their weekly counseling appointments, and that each parent follow the recommendations of the counselor. Parenting coordinator Ann Knotek was appointed to facilitate communication between Mother and Father. Other professionals appointed to work with the family include guardian ad litem Sally Steward ("GAL Steward") and Dr. Pam Reed, the Children's counselor.

[3] In September 2015, Mother filed a petition requesting sole legal custody, a modification of physical custody, and a modification of child support commensurate with the change in physical custody. She alleged that Father's inconsistency and lack of stability presented a risk to the Children's physical and mental well-being. She cited inconsistent bedtimes at Father's house that caused the Children to be overtired for school and other activities, Father's inconsistency in administering C.S.'s and M.S.'s medications, his failure to cooperate with measures recommended by Dr. Reed to alleviate or minimize the number of toileting accidents, and his tardiness for and general attitude toward the Children's counseling appointments.

[4] The trial court conducted hearings on the modification petition, during which the GAL testified concerning her report and recommendations. GAL Steward conferred with both Dr. Reed and Knotek and recommended as follows: that Mother and Father maintain joint legal custody, with Mother having the tie-breaking vote in the event of an impasse concerning medical or counseling decisions; and that Mother be given primary physical custody, with Father

having parenting time every other Friday afternoon through Monday morning and every Tuesday after school until 8:00 p.m. (until C.S.'s and M.S.'s toileting issues are resolved) and overnight Tuesdays thereafter. Mother testified that she would agree to GAL Steward's recommendations. In September 2017, the trial court issued an order with limited sua sponte findings that essentially adopted GAL Steward's recommendations regarding custody. The court ordered Father to pay child support arrearages and calculated his current child support obligation at $53.00 per week.

Father appeals the custody modification order, claiming that certain evidence was improperly admitted and that Mother failed to establish that custody modification is in the Children's best interests due to a substantial change in conditions. Mother cross-appeals the child support portion of the order, claiming that the trial court erred in giving Father a parenting time credit for 181 to 183 days for purposes of calculating his weekly child support obligation. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – Father has waived any challenge to the admission of medical evidence.

In the statement of issues section of his brief, Father questions whether the trial court erred in admitting certain medical evidence. However, he has failed to address that argument in the argument section of his brief. As such, he has

waived it for review. *Zivot v. London*, 981 N.E.2d 129, 137-38 (Ind. Ct. App. 2012).

## Section 2 – The evidence is sufficient to support the trial court's order modifying custody.

Father raises numerous claims that amount to a challenge to the sufficiency of the evidence to support its custody modification order. Custody modification is a determination that rests within the trial court's sound discretion. *In re Marriage of Sutton*, 16 N.E.3d 481, 484 (Ind. Ct. App. 2014). On review, we neither reweigh evidence nor reassess witness credibility. *Id*. Rather, we consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id*. Where, as here, the trial court enters findings of fact and conclusions sua sponte, the specific findings control only with respect to the issues they cover. *Id*. at 484-85. The findings or judgment will be set aside only if they are clearly erroneous, meaning that there are no facts or inferences drawn therefrom to support them. *Id*. at 485. A general judgment standard applies to issues outside the trial court's findings. *Id*.

Indiana Code Section 31-17-2-21(a) allows a trial court to modify a child custody order only if modification is in the best interests of the child and there is a substantial change in at least one of the factors listed in Indiana Code Section 31-17-2-8. These factors include the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

Ind. Code § 31-17-2-8.

[9] Here, the trial court issued the following relevant sua sponte findings:[2]

---

[2] We have replaced any reference to the Children's names with initials.

1.2  The Court finds there is a substantial change in one or more of the factors which the Court may consider under I.C. 31-17-2-8.

1.3  It is in the best interest of the parties' minor children that custody be modified.

1.4  It is in the best interest of the parties' children that legal custody be modified and that Mother and Father shall have joint legal custody of the children, but Mother shall have the authority to "break the tie" concerning any medical or counseling decision. Accordingly, joint legal custody is awarded to Mother and Father.

….

1.6  The Petition to Modify Child Custody is thus GRANTED.

….

The children need counseling at least until C.S. and M.S. have resolved all of their toileting issues.
Father shall have parenting times on Tuesdays (Scout night) which shall be from after school until 8:00 pm until such time as C.S. and M.S.'s toileting problems are resolved.  After those issues are resolved, the Tuesdays shall be overnights until Wednesday mornings.  Father shall also have parenting time every other weekend from Friday after school until Monday morning before school.  However, Father shall STRICTLY ADHERE to an age appropriate bedtime for all three children on his Tuesday and Sunday overnights and shall follow[] specifically all recommendations regarding resolution of the toileting problems including stopping liquid intake at a certain time, waking the children to use the bathroom in the night, etc.
The parent who has the children for overnight parenting time shall be responsible for insuring that all homework due the next day is completed in a timely manner well before bedtime.

….

The children, all three (3), shall continue in counseling with Dr. Pam Reed until further Order of this Court. Both parents shall participate as directed by Dr. Reed and shall be punctual in attendance at such appointments.

….

The Agreement of Property Settlement and For Child Custody and Support filed 4-16-14 required the children to participate in counseling and required the parties to take the children for appointments and to implement the counselor's recommendations. Despite this agreement, Father unilaterally decided to stop taking the children for counseling in August, 2016. Father has failed to take the children for counseling appointments and continually arrived late for appointments. Father has failed to implement the counselor's recommendations.

Appellant's App. Vol. 2 at 26-28.

[10] Father asserts that the trial court abused its discretion by failing to consider the relevant statutory factors. He correctly observes that Indiana Code Section 31-17-2-21 requires the trial court to consider the factors listed in Section 8 when making a custody modification. The court indicated that it did consider the factors, specifically finding that there was a substantial change in one or more of them. Appellant's App. Vol. 2 at 26. Father appears to argue that the trial court was required to issue a finding indicating the specific factor(s) upon which it relied. However, in making custody determinations, courts are not required to issue special findings at all unless requested by a party. *Milcherska v.*

*Hoerstman*, 56 N.E.3d 634, 640 (Ind. Ct. App. 2016). Neither parent requested special findings here.

[11] The trial court's sua sponte findings emphasize the Children's need to continue counseling due to their significant physical and mental issues that must be addressed on a consistent basis. These findings enjoy support throughout the record. With respect to the Children's physical needs, GAL Steward and Dr. Reed both reported that Father lacks consistency in administering medications and attending to the specific medical needs of each child. C.S. suffers from chronic asthma and requires consistent dosages of inhaled medication. However, the record shows that he did not consistently receive both his morning and evening doses when he stayed at Father's house. M.S. has suffered from acid reflux for several years. A doctor diagnosed her with gastroesophageal reflux disease, a diagnosis with which Father disagreed. He scheduled an appointment with a specialist for a second opinion but neglected to tell Mother about the upcoming appointment until the night before, when it was too late for her to rearrange her work schedule. Mother asked him to reschedule the appointment so that she could ask questions and provide the specialist with her pertinent information. Father agreed to reschedule the appointment but admits that he never did so. When M.S. went to camp for a week and did not have her medicine with her, Father did not take measures to replace the medicine but instead told camp personnel to give her Pepto Bismol. Similarly, A.S. spent a week at camp without his antibiotic during a protracted ear infection because Father could not find the medicine at daycare and did not

get a refill or communicate with Mother so that she could get a refill. Father permitted A.S. to swim in his pool with earplugs during his ear infections. During one such ear infection, when A.S. returned from Father's house, Mother could tell from the amount of antibiotic remaining in his returned prescription bottles that Father had not given him the medicine as prescribed. Tr. Vol. 2 at 72.[3]

[12] Father also demonstrated a pattern of inconsistency in dealing with the Children's mental and emotional issues. The record shows that he was generally about thirty to forty-five minutes late for the Children's counseling sessions and that by August 2016, he had ceased taking them at all. The original custody decree mandated that he ensure the Children's participation as well as his own and that he follow the counselor's recommendations. Of most grave concern to GAL Steward were M.S.'s and C.S.'s toileting issues, which she characterized as behavioral and psychological rather than structural or physical. Father argues that because the toileting issues had been ongoing since before the divorce, they are not probative of a substantial change in circumstances. However, Father's response to the toileting issues is highly probative. He disagreed with Dr. Reed's methods for dealing with the toileting

---

[3] Additionally, A.S. was bitten by one of the family dogs while at Father's house, which necessitated a trip to the emergency room. Father and his girlfriend kept the dog, hired a trainer, and reported that A.S. had no further issues with any of their dogs. Because the dog bite occurred in 2014 and there have been no further reported incidents, we find it to be of minor significance in the grand scope of these proceedings. That said, the communication breakdown between Father and Mother during A.S.'s emergency room visit is one example of the ongoing communication issues that precipitated the appointment of parenting coordinator Knotek.

issues and simply refused to adhere to them, even though he was under a court order to do so. He also refused Knotek's attempts to implement a parenting contract aimed at consistency in handling these issues. For example, he did not cut back on M.S.'s and C.S.'s evening fluid intake as instructed. Instead, the Children often ate late dinners at his house, during which he provided M.S. and C.S. with beverages later than the instructed times. Mother testified concerning a specific incident in which she had seen Father give M.S. a bottled water at one of C.S.'s nighttime football games. *Id*. at 80. The record also shows that Father was less consistent in waking up M.S. and C.S. to go to the bathroom in the middle of the night. As a result, they had more bedwetting incidents when staying at his house. Father punished them as he saw fit, i.e., taking away M.S.'s favorite shoes, and not according to the instructions from the professionals involved in their cases.

[13] The Children's toileting issues have impacted not only their physical and mental health but also their social well-being. GAL Steward, a former middle school teacher, testified concerning the major negative social impact of toileting issues for an adolescent or teenage child. *Id*. at 54. Dr. Reed noted that during one session with M.S., when M.S. had been staying at Father's house, she noticed a foul smell indicating poor hygiene, urine, and serious foot odor. Mother reported that M.S. would sometimes stash her soiled underwear in her backpack to avoid punishment. This, of course, led to the social stigma attendant to a foul-smelling backpack.

[14] Simply put, the court ordered Mother and Father to adhere to the recommendations of the professionals involved in the Children's case. Mother did so; Father did not. He now attempts to downplay his noncooperation by claiming that it does not amount to a substantial change of circumstances. In doing so, he asks us to credit his self-serving arguments and disregard the evidence offered not only by Mother but also by the professionals working with the Children. We must decline his invitation to reweigh evidence and reassess credibility. The evidence and inferences most favorable to the judgment are sufficient to support the trial court's conclusion that custody modification is in the Children's best interests due to a substantial change in circumstances affecting their physical and mental health. *See Sutton*, 16 N.E.3d at 485 ("[A] change in circumstances must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential.") (quoting *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1193 (Ind. Ct. App. 2014)). As such, we affirm the custody modification order.

## Section 3 – Mother has established prima facie error in the trial court's calculation of Father's child support obligation.

[15] Mother raises a cross-appeal argument that the trial court used an inaccurate number of overnights in calculating Father's child support obligation. In his reply brief, Father failed to address the issue in any way. Because the procedural posture of this cross-appeal is substantively equivalent to a case in which an appellee fails to provide us with a brief, we review the issue for prima facie error. *In re Riddle*, 946 N.E.2d 61, 70 (Ind. Ct. App. 2011). Prima facie

error is error "at first sight, on first appearance, or on the face of it." *Billings v. Odle*, 891 N.E.2d 106, 108 (Ind. Ct. App. 2008) (citation omitted). The prima facie error rule relieves us of the burden of controverting Mother's arguments for reversal on this issue. *Id.*

[16] Here, the trial court modified physical custody from equal parenting time of alternating weeks (181 to 183 nights per year per parent) to Mother having the Children for ten to eleven out of every fourteen nights, with holidays divided according to the Parenting Time Guidelines. Yet, the child support obligation worksheet attached to the order indicates that Father's $53.00 weekly support obligation was calculated using a parenting time credit for 181 to 183 overnights. Appellant's App. Vol. 2 at 32. Mother correctly cites this as error, given the court's modification of physical custody, and asks that Father's child support obligation be recalculated using an accurate number of overnights. We agree and therefore reverse and remand for a recalculation of Father's weekly child support obligation.

[17] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Barnes, J., concur.