FILED

Feb 28 2020, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Stephen H. Shroyer | Melissa Winkler-York |
| Miller Waters Martin & Hall | The Law Office of Melissa |
| Indianapolis, Indiana | Winkler-York, LLC |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Flavia Rasheed, | February 28, 2020 |
| *Appellant*, | Court of Appeals Case No. 19A-DC-1722 |
| v. | Appeal from the Marion Superior Court |
| Rocky Rasheed, | The Honorable James A. Joven, Judge |
| *Appellee*. | The Honorable Kimberly D. Mattingly, Magistrate |
| | Trial Court Cause No. 49D13-1712-DC-46216 |

**Brown, Judge.**

[1] Flavia Rasheed ("Mother") claims the trial court erred in awarding joint legal custody. We reverse and remand.

## Facts and Procedural History

[2] Mother and Rocky Rasheed ("Father") were married in November 2011 and have two children. In November 2017, Mother filed a petition for an order for protection against Father alleging domestic or family violence,[1] and the court issued an ex parte order for protection. In December 2017, Mother filed a petition for dissolution of marriage. In January 2018, the court issued a preliminary order that the parties share joint legal custody, Mother have primary physical custody, and Father have parenting time according to the Ind. Parenting Time Guidelines. The court also issued an order for protection against Father stating it expired on December 31, 2019. In March 2018, Mother filed a petition for the appointment of a guardian ad litem,[2] and the court appointed Kids' Voice of Indiana as guardian ad litem. Father filed petitions for contempt in June, July, and August 2018 alleging Mother made doctor and dental appointments without communicating with him, did not provide him with information regarding schooling and daycare, started

---

[1] Mother alleged that on one occasion Father pushed her and one of the children to the ground and stated "[n]o one can keep me behind bars," on another occasion he grabbed one of the children hard by the arm, said he was going to teach him a lesson, and grabbed her wrist hard, and at another time he told her she was ugly and too old for anyone to want her and he would kill her family and himself, and she called the police.

[2] Mother alleged Father had encouraged their five-year-old child to play with his handgun, she fears for the safety and well-being of her children, and the parties are members of a small ethnic community with certain cultural customs and expectations and asserted that the assistance of a guardian ad litem would benefit the court.

counseling for one of the children without informing him or asking if he agreed to the counseling, and did not inform him of a trip with the children outside the State of Indiana until they returned. Father also filed a petition to modify parenting time in August 2018 requesting that his midweek parenting time be modified from Wednesdays to Thursdays so he may attend a basketball program with one of the children.

[3] On August 29, 2018, Kids' Voice of Indiana filed a motion for the appointment of a parenting coordinator stating that guardian ad litem Sara Tait ("GAL Tait") was the volunteer guardian ad litem on the case, she had spent hours meeting with the children and the parties, reviewing records, and interviewing third parties, and it had become evident the parties are not able to cooperate consistently to make necessary and timely decisions regarding parenting time changes and medical provider selection for the children. On September 6, 2018, GAL Tait filed a preliminary report stating Mother had a protective order against Father, Father maintains he turned in his weapon to the Sheriff's department, the parties are "part of a small Pakistani community where, as explained to the GAL, the culture is very male-dominated and the children and wife are viewed as property," Mother "appears genuinely concerned and fearful of [Father] and is currently in therapy," and "[t]here are also allegations of threatening harm to the maternal family and taking the children out of the country." Appellant's Appendix Volume II at 68. The report stated that Mother's pastor described Father as "tormenting" Mother and that the pastor had every reason to believe Father's threats against Mother are serious. *Id.* at

69. In her recommendation, GAL Tait stated the parties have not demonstrated an ability to effectively co-parent, and it was her recommendation that Mother have sole legal and physical custody subject to Father's parenting time according to the parenting time guidelines.

[4] On September 17, 2018, the court issued an order stating it had held a status hearing and appointed Robert Shive ("Coordinator Shive") as the parenting coordinator. On January 4, 2019, Father filed a petition to modify parenting time stating he wished to enroll one of the children in a basketball program which meets on Thursdays, the matter was to be addressed with the parenting coordinator due to Mother's assertion she was unwilling to switch parenting time nights due to the protective order and transportation issues it presented for exchanges, he attempted to resolve the matter through the parenting coordinator, and the matter was not resolved. On February 26, 2019, the court issued an order stating it had held a hearing and ordered that Father exercise midweek parenting time on Thursdays.

[5] On March 22, 2019, GAL Tait filed a Guardian Ad Litem Report stating Mother continues to have significant concerns about one of the children's anxiety and trauma associated with Father and his safety and eating at Father's house, Father continues to be "frustrated by 'hoops' he needs to jump through to have access to his children," and he expresses concern that Mother coaches the children against him. *Id.* at 84. GAL Tait stated, with respect to one of the children, "[i]n my nearly 9 years of being a GAL volunteer, I have never been more concerned about the welfare of a child than I am about [the child]." *Id.*

She reported that, upon being told he was going to Father's for a week, the child was hysterical and had a full-scale panic attack, and she reported that she did not believe the behavior was coached or faked. She stated "it was pure hysterics and difficult to watch" and, "[d]uring this time, I heard [the child] scream the following: 'I hate my Dad'; 'My Dad is the meanest'; 'My Dad throws me on the ground'; 'I'm going to kill myself'; 'I never want to see my Dad again.'" *Id*. GAL Tait also stated Coordinator Shive reported the parties have been successfully utilizing Our Family Wizard, he noted Father is aggressive in communications but not insulting, and Coordinator Shive does not have the sense Father is as bad as Mother portrays. In her summary and recommendations, GAL Tait stated that she recommended one of the children begin trauma-related therapy, that the utilization of a parenting coordinator should continue, but that it is in the best interests of the children that one parent have sole decision-making authority, and she recommended that Mother have sole legal and physical custody.

[6] On April 1, 2019, the court held a final hearing. GAL Tait testified that "with these parties in particular, what I was noting from the outset was it was very contentious . . . a lot of back and forth kind of small things causing issues." Transcript Volume II at 26. She testified her goal was to provide tools so the parties could effectively co-parent. She testified Our Family Wizard had been helpful but was disappointed the parties were in court regarding midweek parenting time and she had hoped the issue could have been resolved through the parenting coordinator without court involvement. She recommended

Mother receive legal custody and indicated the parties are unable to effectively co-parent even on very simple matters, day-to-day parenting causes extreme fighting between the parties, they had disagreements about health care for one of the children, and even with a parenting coordinator and Our Family Wizard tool they have not demonstrated the ability to come to a consensus on very simple things. She indicated Father did not feel like he was being informed by Mother, she spoke with Mother about keeping Father informed, the children "need a quarterback" and "somebody who can make decisions and then appropriately inform [Father] and give him access," and there was constant bickering. *Id*. at 33.

[7] Mother testified one of her children was seeing a therapist at Adult and Child center and believed the therapist could not build a rapport with the child, the child should see a new therapist, and Father's participation in the therapy should be limited. When asked why she thought it was important she have sole legal custody, she testified that, in Father's mind, she and the children were his property and that, when she sent him a note on Our Family Wizard that she wanted to enroll one of the children in a summer camp which the child previously attended, Father's response was that he wanted to take the child to Pakistan. When asked if Our Family Wizard had assisted with sharing information, Mother replied "[a]s far as communication sake, yes, but decision-making, no. We always have to involve [Coordinator Shive] and ask him to make decision on several things." *Id*. at 82. She also indicated she would like to see Coordinator Shive continue as the parenting coordinator and she

objected to Father taking the children to Pakistan. She also indicated she wished for any passports for the children to be relinquished to her.

[8] Father testified he disputes Mother's allegations against him and believes she made the false allegations to obtain custody of the children. Father indicated he wished to take the children to Pakistan for a week or a couple of weeks for his sister's wedding. He indicated Adult and Child center had many therapists and suggested checking into the availability of another therapist. On May 30, 2019, Father filed a motion requesting permission to travel to Pakistan with the children for two weeks during his summer parenting time.

[9] In June 2019, the court entered a decree of dissolution providing in part:

> 6. The Parties shall share joint legal custody of the minor children.
>
> 7. Mother shall have primary physical custody of the minor children.
>
> 8. Father shall be entitled to parenting time pursuant to Indiana Parenting Time Guidelines, plus every Thursday overnight and Sunday overnights on his every other weekend. All exchanges for regular parenting time shall occur at the children's schools if school is in session. If school is not in session, the Parties shall exchange the children at the Beech Grove Police Station.
>
> * * * * *
>
> 14. The Parties shall continue to utilize Our Family Wizard for all non-emergency communication.
>
> 15. The Parties shall continue to utilize Robert Shive as a Parenting Coordinator for an additional six (6) months.
>
> 16. This Court has clarified the protection order Mother has against Father to make it clear that Father is entitled to be present at functions,

appointments and activities for the minor children and that the Parties can both be present at parenting time exchanges provided Father follows the protection order and does not approach or speak to Mother during these times.

Appellant's Appendix Volume II at 19-21. **(17)**

## *Discussion*

[10] Where a trial court enters findings of fact and conclusions, we first determine whether the evidence supports the findings, and we then determine whether the findings support the judgment. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct. App. 2011). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* The findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.*

[11] Mother claims the trial court abused its discretion in awarding the parties joint legal custody. She argues their ongoing conflict makes joint legal custody a constant battlefield and, despite almost one and one-half years of litigation, they have not demonstrated an ability to work together for the children's best interests. She argues GAL Tait testified the parties were very contentious and expressed frustration the parties were unable to utilize the parenting coordinator to reach agreements. Father responds there is sufficient evidence to support the court's determination. He asserts the record is almost entirely void of conflict regarding the children's schooling, major medical decisions, or religious upbringing and, although the parties had communication issues and other

disagreements, they ultimately demonstrated a general ability to communicate and work together to raise the children.

[12] We review child custody determinations for an abuse of discretion. *See Gonzalez v. Gonzalez*, 893 N.E.2d 333, 335 (Ind. Ct. App. 2008). Ind. Code § 31-17-2-13 provides "[t]he court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child." Ind. Code § 31-17-2-15 provides:

> In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:
>
>> (1) the fitness and suitability of each of the persons awarded joint custody;
>>
>> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
>>
>> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
>>
>> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
>>
>> (5) whether the persons awarded joint custody:
>>
>>> (A) live in close proximity to each other; and
>>>
>>> (B) plan to continue to do so; and
>>
>> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

"'Joint legal custody', for purposes of . . . IC 31-17-2-13 . . . and IC 31-17-2-15, means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Ind. Code § 31-9-2-67.

[13] The factor under (2) of Ind. Code § 31-17-2-15 is of particular importance in making legal custody determinations. *Milcherska v. Hoerstman*, 56 N.E.3d 634, 641 (Ind. Ct. App. 2016) (citations omitted). Where the parties have made child-rearing a battleground, joint custody is not appropriate. *Id*. at 642. "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Id.* (citing *Swadner v. Swadner*, 897 N.E.2d 966, 974 (Ind. Ct. App. 2008)). We will reverse a trial court's grant of joint legal custody when the evidence indicates the joint custody award "constitutes an imposition of an intolerable situation upon two persons who have made child rearing a battleground." *Swadner*, 897 N.E.2d at 974 (citation omitted). The primary concern of the courts with respect to legal custody is the welfare of the children and not the wishes of the parents. *Carmichael v. Siegel*, 754 N.E.2d 619, 635 (Ind. Ct. App. 2001).

[14] We note the trial court did not enter any specific findings or conclusions regarding its reasons for, or the evidence in support of, its order that the parties share joint legal custody, or state that it found an award of joint legal custody would be in the best interests of the children. GAL Tait recommended Mother

have sole legal custody of the children and reported the parties have not demonstrated an ability to co-parent even on simple matters. The court ordered that all exchanges of the children occur at the children's schools or the police station and referenced Mother's order for protection against Father. The record reveals Mother sought the order for protection, the court appointed a guardian ad litem at Mother's request, Father filed multiple contempt allegations, and the court appointed a parenting coordinator following the guardian ad litem's request. Based on the record before us, and in light of the parties' history of non-cooperation, we conclude the court erred in ordering the parties to share joint legal custody.

For the foregoing reasons, we reverse the trial court's order that Mother and Father share joint legal custody and remand for entry of a modified decree of dissolution providing that Mother have sole legal custody.

Reversed and remanded.

Baker, J., and Riley, J., concur.