## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2017, 7:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William P. Means
Roberts Means, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of: <br><br> J.W., <br><br> *Appellant-Petitioner,* <br><br> v. <br><br> M.W., <br><br> *Appellee-Respondent* | June 13, 2017 <br><br> Court of Appeals Case No. 29A02-1612-DR-2869 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable David K. Najjar, Magistrate <br><br> Trial Court Cause No. 29D01-1006-DR-1444 |

**Baker, Judge.**

[1] J.W. (Father) appeals the trial court's order modifying the child custody arrangement between Father and his ex-wife, M.W. (Mother). Father argues that the trial court erred in two respects: (1) by awarding sole legal custody of their children to Mother; and (2) by ordering that Father must get Mother's permission before enrolling the children in extracurricular activities, even if those activities take place during his parenting time. Finding that the trial court did not err by naming Mother sole legal custodian but that it is improper to require Father to obtain Mother's consent to the children's extracurricular activities when they are with Father, we affirm in part and reverse in part.

## Facts

[2] Two children were born of the parents' marriage: E.W., born in November 2006, and M.W., born in February 2009. Father and Mother were divorced on January 14, 2011. Pursuant to the decree of dissolution, Mother was granted primary physical and sole legal custody of the children; Father was awarded parenting time pursuant to the Indiana Parenting Time Guidelines. On May 9, 2013, Father filed a petition to modify custody. The parties participated in mediation and, on January 28, 2014, the trial court approved a mediated agreement. The mediated agreement provided that Mother and Father would share joint legal custody of the children and that Father would have additional overnights with the children on Wednesdays.

[3] At some point, communication between the parents began to deteriorate and they became unable to agree about issues such as the children's extracurricular

activities. The children are heavily involved in dance classes and competitions, but Father wants them to be exposed to other activities. He enjoys taking them to tennis and golf lessons at his country club, but feels compelled to take them to dance instead during his parenting time. Additionally, Father was reluctant to provide Mother with contact information when the girls are not at his home during his parenting time.

[4] Over the course of 2015 and 2016, the parties filed many pleadings with the trial court. Mother filed multiple motions for contempt, a motion to modify child support, and a motion to determine the children's extracurricular activities. Father filed a petition to modify parenting time, and Mother then filed a counter-petition to modify parenting time and custody. The trial court held a hearing on all pending motions on April 14 and July 18, 2016. On August 5, 2016, the trial court issued an order on all pending matters. In relevant part, the trial court found and held as follows:

12. The Court also finds that [Father] is in contempt of court for failing to provide specific contact information to [Mother] when the children are at a sleepover. The Court finds that the Mediated Agreed Entry is specific with respect to the information to be delivered to [Mother] whenever the children are attending a sleepover and that [Father] has willfully failed to deliver such information.

***

19. As the Court has noted above, the parties have great difficulty in communicating effectively with one another. The Court also finds that the parties are not co-parenting

in an effective manner as [Father] has pursued extra-curricular activities for the children unilaterally and has refused to communicate with [Mother] on certain basic aspects of co-parenting. The most notable example of this is [Father's] refusal to provide [Mother] with contact information for individuals with whom the children would be spending the night.

20. The Court finds, therefore, that it is in the best interests of the children that the parties not exercise joint legal custody, and that [Mother] be awarded sole legal custody of the children.

21. The Court finds that it is in the best interests of the children that the parties communicate as much as possible. To this end, [Mother] is ordered to communicate with [Father] regarding important events in the children's lives, particularly those items which require decisions as to the children's health, education, religious upbringing, and welfare. To the extent that the parties can agree on those decisions, they should do so. To the extent that the parties cannot agree, after making a good faith attempt to agree, [Mother] shall make the decision. [Father] shall not unilaterally make decisions for the children, and should not sign the children up for extra-curricular activities without the consent of [Mother].

\*\*\*

27. . . . Should [Father] enroll the children in any activity without [Mother's] consent, [Father] shall not be entitled to any credit for [any] expenses he incurs for such activity, nor shall [Mother] be obligated in any way to contribute towards the expenses for the activity.

Appellant's App. Vol. II p. 27-29.

[5] At some point, the parties realized that there was a conflict in paragraphs twenty-one and twenty-seven of the trial court's order. The parties brought that to the trial court's attention and, on November 23, 2016, the trial court issued an order clarifying its prior order:

> 4. To the extent any conflict between the two noted paragraphs exists or is perceive[d] to exist, paragraph 21 of the Order controls and Father must obtain Mother's consent prior to enrolling the parties' children in extracurricular activities, including activities during Father's parenting time.
>
> 5. Paragraph 27 of the Order is not intended to convey that Father may enroll the children in extracurricular activities without Mother's consent.

Appealed Order p. 2. Father now appeals.

# Discussion and Decision

# I. Modification of Legal Custody

[6] Father argues that the trial court erred by modifying the parties' legal custody arrangement such that Mother has sole legal custody of the children. When considering a modification from joint legal custody to sole legal custody, we must determine whether there has been a substantial change in one or more of the factors listed in Indiana Code section 31-17-2-15, in addition to considering

any substantial change to the factors in Indiana Code section 31-17-2-8,[1] as is typically necessary for physical custody modifications. *Milcherska v. Hoersman*, 56 N.E.3d 634, 641 (Ind. Ct. App. 2016). Indiana Code section 31-17-2-15 provides that in evaluating a legal custody arrangement, the court shall consider the following factors:

> (1)    the fitness and suitability of each of the persons awarded joint custody;
>
> (2)    whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

---

[1] The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

  (1)    The age and sex of the child.

  (2)    The wishes of the child's parent or parents.

  (3)    The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

  (4)    The interaction and interrelationship of the child with:

      (A)    the child's parent or parents;

      (B)    the child's sibling; and

      (C)    any other person who may significantly affect the child's best interests.

  (5)    The child's adjustment to the child's:

      (A)    home;

      (B)    school; and

      (C)    community.

  (6)    The mental and physical health of all individuals involved.

  (7)    Evidence of a pattern of domestic or family violence by either parent.

  (8)    Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

   (A) live in close proximity to each other; and

   (B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

This Court recently explained that the second factor above is significant:

> Our courts have reiterated that factor (2), whether the parents are willing and able to cooperate in advancing the child's welfare, is of particular importance in making legal custody determinations. *Julie C.* [*v. Andrew C.*]*,* 924 N.E.2d [1249,] 1260 [Ind. Ct. App. 2010)]; *see also Carmichael* [*v. Siegel*]*,* 754 N.E.2d [619,] 635 [Ind. Ct. App. 2001] ("One of the key factors to consider when determining whether joint legal custody is appropriate is whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare."). Where "the parties have made child-rearing a battleground, then joint custody is not appropriate." *Periquet–Febres v. Febres,* 659 N.E.2d 602, 605 (Ind. Ct. App. 1995). "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to

competing parents." *Swadner v. Swadner,* 897 N.E.2d 966, 974 (Ind. Ct. App. 2008) (quotation omitted).

*Milcherska*, 56 N.E.3d at 641-42.

[7] We afford trial courts a great deal of deference in family law matters

> because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to access credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

[8] *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). In reviewing a trial court's order in a family law matter, we will neither reweigh evidence nor reassess witness credibility, and will view the evidence in the light most favorable to the judgment. *D.C. v. J.A.C.*, 977 N.E.2d 951, 954 (Ind. 2012).

[9] Here, the trial court found that the parents are no longer able to work together or communicate effectively. Evidence in the record supporting this finding includes:

- Father has failed to provide Mother with the right of first refusal when he is unable to care for the children during his parenting time. Tr. p. 62-63.
- Father has refused to provide Mother with the host name and telephone number of the location where the children were staying if they were not with Father during his parenting time. *Id.* at 200-01.
- Father and Mother are unable to agree about the children's extracurricular activities. Specifically, Mother wants to increase the amount of time the children spend dancing, and Father wants them to

branch out to other activities. Despite many efforts, the parties continue to disagree. *Id.* at 165-66, 183, 225-27.

Based on this evidence, the trial court found that the parents were no longer communicating or co-parenting effectively and, as a result, it was in the best interests of the children that Mother be awarded sole legal custody. We find that this evidence supports the trial court's conclusions that there was a substantial change in the statutory factor regarding the parents' communication and cooperation and that the modification was in the children's best interests. The trial court had the benefit of assessing the witnesses and the situation in a way that we cannot do based solely on a paper record. We cannot and will not second-guess its carefully considered decision, and decline to reverse on this issue.

## II. Extracurricular Activities

[10] Father next argues that, even if the trial court did not err by naming Mother the children's sole legal custodian, it erred by ordering that Father must obtain Mother's consent to enroll the children in extracurricular activities, even if those activities occur during his parenting time. Father argues that this order impermissibly infringes on his constitutional rights as a parent. He insists that even if Mother has sole legal custody, "she should not have the authority to control what activities Father engaged in with the children during his parenting time." Appellant's Br. p. 13.

[11]     Initially, we note that Mother acknowledges that her rights as legal custodian of the children do not extend to small matters such as extracurricular activities: "Mother agrees with Father that 'legal custody' relates to major decisions regarding a child's upbringing, including education, health care, and religion." Appellee's Br. p. 7. Thus, the order relating to the children's extracurricular activities is a separate "consent requirement . . . based upon issues in [the] area of child-related communication." *Id.* at 9. We agree that this portion of the order should not be analyzed in the context of legal custody, but instead in the context of a parent's right to make unilateral decisions regarding the way in which her children spend their time when they are in the care and custody of their other parent.

[12]     Here, the trial court found that the parents have difficulty communicating and reaching agreements about the children's extracurricular activities. To solve this issue by giving Mother the sole right to consent or refuse, however, goes a step too far. Would the trial court require Father to ask Mother's permission to take the children to see a particular movie when they are with him? To take them to a particular restaurant? To take them to a sporting event, or a parade, or for a hike in a park? We see no meaningful way to distinguish between these examples and the example at issue here, namely, Father's desire to sign the children up for golf and/or tennis lessons when they are with him, at his cost, causing no interference whatsoever to Mother or her time with them.

[13]     There is no suggestion that the activities in which the children have participated when with Father are inappropriate or harmful in any way. He has taken them

to play tennis and golf, which are perfectly appropriate and beneficial activities for children. So long as that is the case, it is inappropriate to require that Mother have the right to refuse the way in which the children spend their time when they are with Father. Therefore, while we affirm the portion of the order naming Mother as the children's legal custodian, we reverse the portion of the order requiring that Father obtain her permission for the children's extracurricular activities when they are with him.

[14] We strongly encourage these parents to put aside their own issues and learn to work together for the sake of their children. If Mother and Father are able to agree on the fundamental issues such as education and religion, they should find a way to agree about the much smaller issue of extracurricular activities.

[15] The judgment of the trial court is affirmed in part and reversed in part.

Barnes, J., and Crone, J., concur.