## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 16 2019, 7:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan Lee Ciyou
Indianapolis, Indiana

Matthew Keith Phillips
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Janice Mandla Mattingly
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steve A. Lavalle,

*Appellant-Respondent,*

v.

Lori S. Lavalle,

*Appellee-Petitioner.*

April 16, 2019

Court of Appeals Case No.
18A-DR-2320

Appeal from the Hamilton
Superior Court

The Honorable Jonathan M.
Brown, Judge

The Honorable William P.
Greenaway, Magistrate

Trial Court Cause No.
29D02-1209-DR-9888

**Tavitas, Judge.**

# Case Summary

Steve Lavalle ("Father") appeals the trial court's denial of his petition to modify legal custody and child support and the trial court's grant of a motion for attorney fees filed by Lori Lavalle ("Mother"). We affirm.

# Issues

Father raises three issues, which we restate as:

    I.    Whether the trial court erred by denying Father's motion for modification of legal custody.

    II.    Whether the trial court erred by denying Father's motion for modification of child support.

    III.    Whether the trial court erred by ordering Father to pay $23,269.25 to Mother's attorney.

# Facts

Father and Mother married in 1998 and had one child, J.L., who was born in 2006. In 2012, Mother filed a petition for dissolution of marriage, and Father relocated to Tennessee. In June 2013, the trial court entered a decree of dissolution of marriage and ordered the following pursuant to an agreement between the parties: (1) Mother was awarded sole legal custody and primary physical custody of J.L. subject to Father's parenting time schedule; and (2) Father was ordered to pay $252 per week in child support. J.L. has been diagnosed with ADHD, "PDD, which means he's on the autism spectrum," and an anxiety disorder. Tr. Vol. II. p. 86.

[4]     In September 2013, Mother filed a petition for a temporary restriction of Father's parenting time, a request for an emergency hearing, and a request for the appointment of a Guardian Ad Litem ("GAL"). Although we were not provided with this petition, it appears from the transcripts that Mother alleged abuse of J.L. by Father's then-current wife. In October 2013, the trial court issued an order providing that Father could exercise his parenting time if his then-current wife was not present.

[5]     In February 2014, Mother filed a petition to remove Father's parenting time credit from his child support obligation, a petition to modify child support, and a request for payment of extracurricular expenses. In April 2014, the trial court ordered the parties to participate in therapy and phase in parenting time with Father's then-current wife present. In October 2014, the trial court denied Mother's petition for modification of child support and petition regarding parenting time. The trial court, however, ordered Father to pay $12,645.45 of Mother's attorney fees because of Father's higher income and Father's failure to follow the recommendations of J.L.'s treatment team, which contributed to the litigation.

[6]     Father and his second wife divorced and, in April 2016, Father relocated back to Indiana. Father has one subsequently-born child, who was born in September 2016. In November 2017, Father filed a petition to modify child support, parenting time, and legal custody. Father alleged: (1) that he had been exercising standard parenting time pursuant to the Guidelines since his relocation; (2) that he was actively involved with J.L.; (3) that his income had

substantially decreased; (4) that Mother's income had substantially increased; and (5) that he had a subsequently-born child. Father requested a modification of child support, a modification of parenting time, and an award of joint legal custody. Mother agreed to the modification of Father's parenting time. Mother, however, objected to a modification of legal custody and child support. According to Mother, "the parties' views on education, religion, and medical care are drastically different, and the parties['] ability to effectively communicate (although improved at times since the time of divorce) is lacking." Appellant's App. Vol. II p. 160. Mother also filed a request that Father pay her attorney fees to defend against Father's motion.

[7] In February 2018, the trial court ordered a modification of Father's parenting time pursuant to Mother's agreement. In July 2018, Father filed a motion to enforce a prior order limiting J.L.'s non-school related extracurricular activities to one such activity. Father argued that J.L. was enrolled in Boy Scouts, Little League Baseball, and 4-H at the same time.[1]

[8] The trial court held a hearing on the pending issues on April 5, 2018, July 26, 2018, and August 2, 2018. On August 27, 2018, the trial court entered an order denying Father's motion for modification of child support and legal custody.

---

[1] Although not at issue in this appeal, the trial court denied Father's motion as follows:

> The Court finds that the Order entered on 10/15/14 provides a limitation, unless the parties agree to more, on the parties' respective obligation toward extracurricular expenses[,] not on the number of activities in which [J.L.] can participate. Mother is not obligated to limit the number of activities in which [J.L.] can participate.

Appellant's App. Vol. II p. 188.

The trial court also granted Mother's motion for attorney fees and ordered Father to pay $23,269.25 to Mother's attorney within thirty days. Father now appeals.

# Analysis

The trial court entered findings of fact and conclusions of law in its order denying Father's petition for modification of custody and child support and granting Mother's request for attorney fees. Pursuant to Indiana Trial Rule 52(A), we will "'not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016) (quoting *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012)). Where a trial court enters findings sua sponte, as it did here, we review issues covered by the findings with a two-tiered standard of review that asks: (1) whether the evidence supports the findings; and (2) whether the findings support the judgment. *Id.* Any issue not covered by the findings is reviewed under the general judgment standard, meaning we should affirm based on any legal theory supported by the evidence. *Id.* at 123-24.

## I. Modification of Legal Custody

Father argues that the trial court erred by denying his petition to modify legal custody. Father argues that joint legal custody was in J.L.'s best interest. According to Father, the parties communicated well, and J.L. was not impacted by their disagreements. Father's primary argument at trial and on appeal is that

Mother used "her 'sole' [legal custody] status over [the] years as a stick to prod Father to bend to her will." Appellant's Br. p. 18. Father contends that Mother "created and arbitrated" disputes between Father and Mother. *Id.*

[11]     [T]here is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (citations omitted).

*Steele-Giri*, 51 N.E.3d at 124.

[12]     The party seeking to modify custody bears the burden of demonstrating the existing custody should be modified. *Id.* This "'more stringent standard' is required to support a change in custody, as opposed to an initial custody determination[] where there is no presumption for either parent because 'permanence and stability are considered best for the welfare and happiness of the child.'" *Id.* (quoting *Lamb v. Wenning*, 600 N.E.2d 96, 98 (Ind. 1992)).

[13] "Joint legal custody . . . means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Ind. Code § 31-9-2-67. In addressing a request to modify legal custody to joint legal custody, the trial court must consider three statutes: Indiana Code Sections 31-17-2-8, 31-17-2-15, and 31-17-2-21. *Miller v. Carpenter*, 965 N.E.2d 104, 109 (Ind. Ct. App. 2012).

[14] Indiana Code Section 31-17-2-21(a) provides that a trial court "may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code Section 31-17-2-8] . . . ." Indiana Code Section 31-17-2-8 requires a trial court to "consider all relevant factors, including the following:"

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

(9) A designation in a power of attorney of:

(A) the child's parent; or

(B) a person found to be a de facto custodian of the child.

[15] Indiana Code Section 31-17-2-15 contains factors pertinent specifically to joint legal custody:

In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint

custody have agreed to an award of joint legal custody. The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

[16] The trial court here denied Father's motion for modification of legal custody and stated as follows:

. . . . .

9. [ ] This motion is DENIED. The Court finds that a change in legal custody is not in [J.L.]'s best interest. Indiana Courts have

consistently held that the parties' ability to communicate and cooperate is a key factor when making a legal custody determination. *[S]ee e.g.* Indiana Code section 31-17-2-15(2); *J.W. v. M.W.*, 77 N.E.3d 1274, 1278 (Ind. Ct. App. 2017). Where the parties have made child-rearing a battleground, joint custody is not appropriate. *J.W.*, 77 N.E.3d at 1278. Here, Mother and Father are unable to communicate and cooperate to advance [J.L.]'s welfare. The parties' litigation history alone is indicative of their inability to work together. Awarding joint legal custody would invite yet further litigation and result in an also certain deadlock on legal custody related decisions.

10. Most significantly, the parties fundamentally disagree regarding religion, medical care, and education as it relates to [J.L.]'s upbringing. The custodial parent's right to choose the child's religious training should not be disturbed, so long as it does not unreasonably interfere with the other parent's visitation rights. *AGR ex. Rel Conflenti v. Huff*, 815 N.E.2d 120 (Ind. Ct. App. 2004), *trans. denied* (2005). *See also* Indiana Code Section 31-1-11.5-21. A custodial parent's interference with a noncustodial parent's parenting time cannot alone justify a modification of custody. The interference must deprive the noncustodial parent of regular, meaningful visitation with the child/ren. *Johnson v. Nation*, 615 N.E.2d 141, 146 (Ind. Ct. App. 1993); *See also Overman v. Overman*, 497 N.E.2d 618 (Ind. Ct. App. 1986) (finding that the trial court abused its discretion in ordering the noncustodial parent was not responsible for transporting his son to catechism at Catholic church on Saturday mornings during his visitation as requiring said participation did not unreasonably interfere with Father's parenting time, even with considering that there was a significant distance between Father's home and the church).

11. Father has never alleged that that [sic] [J.L.]'s physical or emotional health is endangered by having to take [J.L.] to his church for [J.L.]'s various religious activities/events. Changes to

Father's parenting time schedule is an incidental result of Mother's right to make religious determinations for [J.L.]. Mother has in no way barred Father from exercising his parenting time in a regular meaningful manner. A change of custody is not warranted.

12. The Court hereby DENIES Father's request to modify legal custody. Mother shall continue as [J.L.]'s sole legal custodian.

Appellant's App. Vol. II pp. 186-88.

[17] The trial court found that joint legal custody was not in J.L.'s best interest because Father and Mother are unable to communicate and cooperate in advancing J.L.'s welfare. The record supports the trial court's findings and conclusions on this issue.

[18] Father testified that he and Mother fought over Father helping J.L. with his homework on weekends that Father had parenting time; that they fought over J.L. seeing Father's new girlfriend and staying at her residence; that they fought over taking J.L. to church during Father's parenting time; that they argued over J.L.'s clothing that was missing or returned unwashed after Father's parenting time; and that they disagreed over the number of J.L.'s extracurricular activities. Father alleged that Mother was "infring[ing] on [his] rights" during his parenting time by controlling his activities during parenting time. Tr. Vol. II p. 22. Father testified that he "just got tired of dealing with all the harassment." *Id.* at 11. Father testified that he and Mother communicate with each other primarily through text messages or emails, but he disagreed with her allegations that they do not communicate well. According to Father, they were able to

communicate regarding J.L.'s clothing and reach a resolution. Father testified that their communication was "good today" and "could improve . . . much more" with joint legal custody. *Id.* at 70.

[19] On the second day of the hearing, the parties had a disagreement regarding childcare for eleven-year-old J.L. Father left J.L. in the care of his girlfriend. The girlfriend was scheduled to testify later that day at the hearing. Father planned to leave J.L. with the girlfriend's thirteen-year-old twins while the girlfriend testified. Mother, however, objected to leaving J.L., who has an anxiety disorder, with the twins. The trial court intervened to resolve the issue.

[20] Mother testified that the communication between Mother and Father was "awful" and that they "don't get along." Tr. Vol. III p. 188. According to Mother, Father and Mother "fundamentally disagree" regarding religion, education, and healthcare for J.L. Mother testified that she did not believe joint legal custody was feasible because "health and education and religion are all big areas. And I do not see [Father] and I getting along on a lot of little things, much less larger issues, without getting push-back from him on anything I requested. So, I could see us being in litigation a lot." *Id.* at 192. Mother argued:

> [Father] says that if I send him -- if I send him lists of activities or lists of anything, [Father] says that I'm trying to control him. Like, if I send emails that say, here is [J.L.'s] activities this weekend, he says that's me controlling his time. That's simply not the case. That's trying to communicate what's going on, because [J.L.] has a life.

*Id.* at 201.  According to Mother, Father does not "even inquire" about J.L.'s "school or religious training or his medical things."  *Id.* at 243.  Father also sometimes does not respond to Mother's emails.

[21]  Our courts have emphasized that the second factor of Indiana Code Section 31-17-2-15—whether the parents are willing and able to cooperate in advancing the child's welfare—is of particular importance in making legal custody determinations.  *Milcherska v. Hoerstman*, 56 N.E.3d 634, 641 (Ind. Ct. App. 2016).  Where the parties have made child-rearing a battleground, joint legal custody is not appropriate.  *Id.* at 642.  "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents."  *Id.* (quoting *Swadner v. Swadner*, 897 N.E.2d 966, 974 (Ind. Ct. App. 2008)).

[22]  Father's argument appears to boil down to his contention that Mother tries to control his parenting of J.L. during his parenting time.  The record, however, is replete with examples of how Father and Mother are unable and unwilling "to communicate and cooperate in advancing the child's welfare."  Ind. Code § 31-17-2-15(2).  We accord the trial court substantial discretion in such custody disputes.  Given the substantial evidence of the parties' inability to communicate to promote the best interest of J.L., the trial court properly found that modification of legal custody was not in J.L.'s best interest.  The trial court's denial of Father's motion for modification of legal custody is not clearly erroneous.

## II. Modification of Child Support

[23]   Father also argues that the trial court erred by denying his motion for modification of child support. We give considerable deference to the findings of the trial court in family law matters. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005). Upon the review of a child support modification order, we consider only evidence and reasonable inferences favorable to the judgment. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015). We will set aside the trial court's order only if it is clearly erroneous. *Id.*

[24]   A modification of child support may be made only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1.

[25]   The trial court denied Father's motion for modification of child support as follows:

> The Court finds that Father's request for a modification of child support is hereby DENIED as the current recommended child support does not differ by more than twenty percent (20%) from the current child support order. The support order and the 6% rule for the payment of uninsured medical expenses shall remain the same as provided in the Decree.

Appellant's App. Vol. II pp. 185-86.

[26] Father argues that he "demonstrated a 20% change in his income, as well as various other substantial changes that warrant a modification of the current child support order." Appellant's Br. p. 19. The modification statute, however, requires a twenty percent change in the amount of child support, not a twenty percent change in income. Father makes no further argument that there was a showing of changed circumstances so substantial and continuing as to make the terms of the child support order unreasonable. Rather, his argument focuses only on subsection (2). Consequently, Father was required to show that: (1) the original order had been issued at least twelve months before the modification petition, which Father has proven; and (2) his current child support obligation differs by more than twenty percent from the amount that would be ordered by applying the child support guidelines. Thus, we focus our analysis on whether Father's current child support obligation differs by more than twenty percent from the amount that would be ordered by applying the child support guidelines.

[27] Father testified that he is employed by Verizon Wireless and is compensated with a biweekly salary, a monthly commission, a quarterly incentive, and an

automobile allowance. As such, his income fluctuates. Father first proposed averaging his income over a three-year period. At the second hearing, however, Father testified that his commissions and incentive pay had decreased since the first hearing. Father then proposed basing his child support on his last six months of income. Father also testified that his child support obligation was impacted by an increase in his parenting time; a subsequently-born child; and an increase in Mother's income. Mother, however, testified that Father's income fluctuates with changes in his territory and seasons of the year. According to Mother, Father is capable of controlling his income and "push[ing] back sales" to increase or decrease his commission in a certain month. Tr. Vol. III p. 181.

[28] Father's original child support obligation was $252 per week. A difference of more than twenty percent would result in a child support obligation of less than $201.60. Father submitted two proposed child support worksheets at the first hearing (*see* Exhibit G and Exhibit H) and two additional proposed child support worksheets at the second hearing (*see* Exhibit V and Exhibit Z). On appeal, Father appears to rely on Exhibit H and Exhibit V. Accordingly, we limit our discussion to those proposed child support worksheets.

[29] Exhibit H was specifically rejected by the trial court because, rather than using the "Subsequent Child Multiplier Credit" for Father's subsequently-born child, Father included his subsequently-born child as a "Prior Born" child. Ex. Vol. IV p. 39. Although this difference was discussed at the trial, Father's appellant's brief fails to mention this difference. *See* Ind. Child Support

Guideline 3(C) (discussing adjustments for subsequent-born children and prior-born children). We agree with the trial court that Exhibit H was improperly calculated, and accordingly, we do not address Exhibit H further.

[30]   In Exhibit V, Father based his income calculation on his "last six months of income." Tr. Vol. II pp. 103-04. Earlier proposed child support worksheets indicated an averaged income over a three-year period, resulting in a significantly higher weekly income calculation.

[31]   Indiana Child Support Guideline 3(A) defines weekly gross income to include "income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime . . . ." Commentary 2(b) to Indiana Child Support Guideline 3(A) addresses commissions and other forms of irregular income and provides:

> There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact sensitive.
>
> Each of the above items is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings. Care

should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.

When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court determines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.

[32] Given Mother's testimony that Father is able to adjust his income to reduce it in a certain month and evidence that Father's income fluctuates, it was not clear error for the trial court to reject Father's proposed child support worksheet, which was based only on Father's income over the last six months. *See, e.g., In re Paternity of G.R.G.*, 829 N.E.2d 114, 119 (Ind. Ct. App. 2005) (affirming the trial court's calculation of the parent's income where the trial court averaged the parent's income over a three-year period); *Bower v. Bower*, 697 N.E.2d 110, 114 (Ind. Ct. App. 1998) (affirming the trial court's use of an average income over a five-year period where the parent's annual income was subject to great fluctuations).

[33] The trial court determined that Father's current child support obligation did not differ by more than twenty percent from the amount that would be ordered by applying the child support guidelines. This determination is not clearly

erroneous.  The trial court did not err by denying Father's motion for modification of child support.[2]

### III. *Mother's Attorney Fees*

[34]     Finally, Father argues that the trial court erred by ordering him to pay Mother's attorney fees related to Father's modification petition.  The trial court may periodically order a party to pay a reasonable amount for the cost to the other party of maintaining or defending a proceeding, including attorney fees.  *See* Ind. Code § 31-17-7-1 (regarding custody issues); Ind. Code § 31-16-11-1 (regarding child support issues).[3]  A determination regarding attorney fees in such proceedings is within the sound discretion of the trial court, and we will reverse the trial court's determination only upon a showing of a clear abuse of that discretion.  *Martinez v. Deeter*, 968 N.E.2d 799, 810 (Ind. Ct. App. 2012). "In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness."  *Id.*  "The trial court may also consider any misconduct on the

---

[2] Father also argues that the trial court was not allowed to rely on Mother's proposed child support worksheets because they were unsigned.  Father did not object to the admission of Mother's proposed child support worksheets.  We also note that only one of Father's proposed child support worksheets, Exhibit V, was signed.  Regardless of whether the trial court could rely on Mother's proposed child support worksheets, Father had the burden of proving that he was entitled to a modification of child support.  Father failed to do so.

[3] Father, instead, erroneously argues that Indiana Code Section 34-52-1-1 applies and, "in order to award attorney's fees, the court must find that either party brought an action or defense that is frivolous, unreasonable, or groundless, continues to litigate the claim or defense after it becomes frivolous, unreasonable, or groundless, or has litigated in bad faith."  Appellant's Br. p. 25.

part of either of the parties that creates additional legal expenses not otherwise anticipated." *Id.* "The trial court need not cite the reasons for its determination." *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 682 (Ind. Ct. App. 2008).

[35]     Mother's motion for attorney fees was granted by the trial court, and the trial court's order is as follows:

> Mother has incurred fees to defend against Father's Petition. Based on the disparities of the parties' incomes and Father prematurely and unnecessarily seeking the Court's intervention, Father shall pay Mother's attorney fees to Katzman & Katzman, P.C. via certified check or money order in the amount of $23,269.25 within thirty (30) days of this Order. Any amount unpaid after the due date, upon proper motion and proposed order, shall be entered as a civil judgment.

Appellant's App. Vol. II p. 188.

[36]     The trial court ordered Father to pay all of Mother's attorney fees incurred in defending Father's petition for modification. Mother testified that she was "in a really bad spot financially" due to attorney fees, unexpected expenses for the litigation, and missed work. Tr. Vol. III p. 188. She testified: "I'm not going to be able to dig my way out of this one. I don't make the money to do that." *Id.* at 219. Father's income is generally more than three times Mother's income.

[37]     Further, the trial court noted that Father "prematurely and unnecessarily" sought the trial court's intervention in this matter. Appellant's App. Vol. II p. 188. Although the trial court did not explain how Father prematurely and

unnecessarily sought trial court intervention, in her response to Father's modification petition, Mother noted: "Father made no attempts to work out an agreement outside of Court prior to his filing his Petition to Modify. While, Mother has made multiple efforts to resolve this matter outside of Court (after receipt of his Petition to Modify) and has received little response from Father." Appellant's App. Vol. II p. 161. Emails admitted at the hearings show that the parties disagreed over J.L. spending the night at Father's new girlfriend's house. Mother told Father that she was filing for mediation, and Father responded by filing his petition for modification.

[38] We find that the trial court appears to have properly considered the parties' resources, economic condition, and other relevant factors, including Father's rush to file his petition for modification. Given Mother's financial situation and Father's comparative income, we cannot say that the trial court abused its discretion in ordering Father to pay Mother's attorney fees.[4]

---

[4] Father also argues that part of Mother's attorney fees "referenced the projected cost of attending a future hearing" and that the attorney fees are "speculative." Appellant's Br. p. 27. Mother's attorney presented an affidavit of attorney fees amounting to $23,269.25. The "future" hearing referred to the last day of the parties' modification hearing, August 2, 2018. Mother's attorney estimated five hours to travel to and from the hearing and participate in the hearing. The "future" hearing was not a random hearing in the future; rather, it was the last day of hearings to address Father's modification petition. Father's argument is not persuasive.

# Conclusion

[39] Denial of Father's petition to modify legal custody and child support is not clearly erroneous. The trial court did not abuse its discretion by granting Mother's motion for attorney fees. We affirm.

[40] Affirmed.

Baker, J., and May, J., concur.