



FILED
May 04 2026, 9:08 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Leslie Tomic,

*Appellant*

v.

Christopher M. Vanduyne,

*Appellee*

---

May 4, 2026

Court of Appeals Case No.
25A-DC-2458

Appeal from the Marshall Circuit Court

The Honorable Janette E. Surrisi, Judge

Trial Court Cause No.
50C01-2105-DC-72

---

**Opinion by Judge Brown**
Judges Altice and DeBoer concur.

**Brown, Judge.**

[1] Leslie Tomic ("Mother") appeals the trial court's order denying her request to modify legal custody of the minor child she shares with Christopher M. Vanduyne ("Father"). We affirm.

## Facts and Procedural History

[2] Mother and Father married in January 2015 and are the parents of D.T.V. ("Child"), born in October 2017. Father filed a Petition for Dissolution of Marriage on May 10, 2021.[1] On August 11, 2021, the parties entered into an agreed provisional order which provided for joint legal and physical custody. Because Mother resided in Virginia and Father resided in Indiana, the parties agreed to exchange Child between Virginia and Indiana every two weeks with no child support owed by either parent. The trial court held final dissolution proceedings on November 15 and 16, 2022, and January 31, 2023. On March 6, 2023, the court entered its decree dissolving the parties' marriage. The court granted Mother primary physical custody of Child and ordered that the parties would continue to share joint legal custody. Father was awarded parenting time pursuant to the Indiana Parenting Time Guidelines ("IPTG") when Distance is a Major Factor.

---

[1] The record indicates that two weeks prior, Mother filed a petition for dissolution in Virginia. Ultimately, it was decided that Indiana was the correct jurisdiction.

[3] On September 22, 2023, Mother filed a Motion to Modify/Clarify Parenting Time and Parenting Time Exchanges. On October 24, 2023, Father filed a Motion to Modify/Clarify Parenting Time and Parenting Time Exchanges. Both motions highlighted numerous disputes and poor communication between the parties. On November 3, 2023, Father notified the court that he would be moving from Indiana to Washington, D.C., and on December 29, 2023, Father filed a Motion to Modify Visitation. Father stated that he was moving in January of 2024 to live within ten minutes of Child and wanted parenting time consistent with the traditional IPTG. On February 7, 2024, the parties reached an agreement which provided that Father shall be awarded parenting time pursuant to the IPTG and that "the issue of Additional Parenting Time/Right of First Refusal under the [IPTG] is hereby reserved for argument in front of the Court." Appellant's Appendix Volume II at 112.

[4] Thereafter, in March 2024, Father became the subject of a Department of Child Services investigation in Virginia after Mother reported to Child's therapist that Child had said that "she sleeps with her dad naked while he is also naked." *Id*. at 249. Following the allegation, Child's therapist terminated her relationship with Child so that Child could receive counseling from a trauma specialist, and in the months that followed, the parties were unable to communicate appropriately in order to select a new counselor despite the parties agreeing that Child was in need of therapy.

[5] On July 19, 2024, Mother filed a Motion to Modify Custody requesting sole legal custody of Child. Mother also filed contemporaneously a Motion for

Hearing and Motion for Rule to Show Cause. On August 21, 2024, Father filed a Motion for Rule to Show Cause and, on September 6, 2024, Father filed a Moton to Modify Custody requesting he be granted primary physical custody of Child. He further requested "a custody evaluation" by a Guardian Ad Litem occur prior to an evidentiary hearing. *Id*. at 130.

[6] On September 12, 2024, Mother filed an Objection to Appointment of Guardian Ad Litem and/or Custody Evaluation. On the same date, Father filed a Verified Petition for Temporary Restraining Order and Preliminary Injunction requesting an order prohibiting Mother from "making any further unilateral decision for [Child's] health and well-being" and enjoining the placement of Child "into any therapy treatment unless expressly agreed to by the parties . . . ." *Id*. at 142. Mother filed a response to Father's petition and, on September 18, 2024, the court denied Father's petition.

[7] On October 4, 2024, the court held a hearing. The court ordered the parties to "work together to find an agreed counselor for Child by October 24, 2024," and to inform the court when and/if a resolution was reached. *Id*. at 167. On October 28, 2024, both parties filed detailed memoranda indicating that they had not been able to reach an agreement, each blaming the other party. On November 13, 2024, the court issued an order concluding that neither party had complied with its previous order and again stated that "parents and counsel are ordered to work together to find an agreed counselor for Child by December 12, 2024." Appellant's Appendix Volume III at 25. On December 17, 2024, both

parties filed detailed memoranda indicating that they had not been able to reach an agreement, each again blaming their respective failures on the other party.

[8] On January 15, 2025, the court issued an order for each party, by February 3, 2025, to "individually prepare and file with the Court a list of the top three counselors/mental health providers they would each select for Child's therapy" and that the "Court will consider ordering therapy for Child with one of the named providers." *Id*. at 116. The court scheduled a review hearing for February 7, 2025. On January 28, 2025, Mother filed a motion arguing that the court did not have "the power to make specific legal custody decisions on behalf of minor children" and requesting the court to hold a hearing on her Motion to Modify legal custody and determine if she "should be granted sole legal custody" which would allow her to unilaterally make "such important decisions" on behalf of Child. *Id*. at 120. On February 4, 2025, the court issued an order denying Mother's motion.

[9] The court held a review hearing on February 7, 2025, during which the parties presented argument regarding potential counselors for Child. On February 18, 2025, the court issued an order for the parties to "start immediately working to enroll [Child] with Iris Therapy Services." *Id*. at 139.

[10] A hearing to consider "all of the parties' other pending matters" was ultimately held on June 24, 2025. *Id*. On July 18, 2025, the court issued a detailed order, including findings of fact and conclusions thereon, denying both Mother's and Father's petitions to modify custody, granting Mother's petition for rule to

show cause, and denying Father's petition for rule to show cause. Specifically, the court observed the parties' tumultuous history and "long history of litigation regarding Child." *Id*. at 155. When referencing Mother's abuse allegation against Father, the court noted that Mother had made a similar allegation in 2023, Mother downplayed her more recent allegation during her hearing testimony, the timing of Mother's recent allegation indicated it was motivated by Father's plan to move closer and participate more in Child's upbringing, and that "no allegations of abuse, neglect or otherwise whatsoever have ever been substantiated against Father." *Id*. at 158. The court found that "the counseling process may have been used, or tainted, [by Mother] to gain an advantage in the custody proceedings." *Id*. at 159. The court found that "Father is at fault for the poor co-parenting relationship as well," and that "Mother is intentionally non-communicative or rather obscure in her limited communication while Father over communicated often in an overtly foul and offensive manner." *Id*. at 160.

[11]     The court further found that as a general matter, "cooperation or lack thereof is not appropriate grounds for switching custody," and while joint custody may be improper "where parents have made parenting a battleground," it is in Child's best interest to have "both parents involved in her life." *Id*. at 167-168. The court observed that Child's therapy, or lack thereof, seemed to be the main point of discord, but that "Child is doing pretty well without therapy" and that

she is "not in dire need of counseling." *Id*. at 169-170.[2] Regarding Mother's request for modification and sole legal custody, the court found that it "must be cautious not to reward a custodial parent with [sole legal[3]] custody when the custodial parent has engaged in sowing the seeds of discord" and that Mother "has sown the seeds of discord." *Id*. at 169. Regarding Father's request for modification and primary physical custody, the court found that "Child is doing well in Mother's home and so many abrupt switches and changes are not in her best interest" but that "permanency and stability" are in Child's best interest. *Id*. Thus, the court denied both parties' requests for modifications of custody.

[12] In addition, noting that Ind. Code § 31-17-2-16[4] provides a "specific mechanism for judges to step in and get a child counseling as needed," the court found that "counseling would be beneficial" for Child and, "in exercising its authority under Ind. Code § 31-17-2-16," directed Mother to select two options for a counselor within fifteen days of the court's order and, Father shall have fifteen days of Mother's selection to pick a counselor from one of the two choices Mother offers. *Id*. at 170. The court ordered that "[n]either party shall

---

[2] The court found telling that "parents made no effort to inform the Court from February of 2025 until the hearing of June 24, 2025, that the counselor selected [from Iris Therapy Services] was no longer available." Appellant's Appendix Volume III at 169.

[3] By order dated September 2, 2025, the court amended this finding by replacing the term "joint" with the term "sole legal" due to a scrivener's error.

[4] Ind. Code § 31-17-2-16 provides in relevant part: "Upon: (1) the court's own motion . . . the court may order the custodian or the joint custodians to obtain counseling for the child under such terms and conditions as the court considers appropriate."

disparage the other parent to the new counselor." *Id*. On August 18, 2025, Mother filed a Motion to Correct Error, which the trial court denied by written order on September 2, 2025.

## Discussion

### I.

Mother asserts that the trial court abused its discretion in denying her motion to modify and request for sole legal custody of Child. She argues that the court "systematically disregarded [her] evidence and narrowly focused on Father's unsupported, paranoid assertions, despite Father clearly articulating that he does not trust Mother, and he is incapable of working together to promote [Child's] best interests." Appellant's Brief at 14.

We review custody modifications for an abuse of discretion with a preference for granting latitude and deference to trial courts in family law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id*. The Indiana Supreme Court explained the reason for this deference in *Kirk*:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should

have found its preponderance or the inferences therefrom to be different from what he did.

*Id.* (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

[15] When considering a modification from joint legal custody to sole legal custody, we must determine whether there has been a substantial change in one or more of the factors listed in Ind. Code § 31-17-2-15, in addition to considering any substantial change to the factors in Ind. Code § 31-17-2-8, as is typically necessary for physical custody modifications.[5] *J.W. v. M.W.*, 77 N.E.3d 1274, 1277-1278 (Ind. Ct. App. 2017) (footnote omitted) (citing *Milcherska v. Hoerstman*, 56 N.E.3d 634, 641 (Ind. Ct. App. 2016)).

---

[5] Ind. Code § 31-17-2-8 provides in part:

The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

[16]     Ind. Code § 31-17-2-15 provides:

> In determining whether an award of joint legal custody under section 13[6] of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:
>
> (1) the fitness and suitability of each of the persons awarded joint custody;
>
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
>
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
>
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
>
> (5) whether the persons awarded joint custody:
>
>> (A) live in close proximity to each other; and
>>
>> (B) plan to continue to do so; and
>
> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

---

[6] Ind. Code § 31-17-2-13 provides that "[t]he court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child." "'Joint legal custody, for purposes of . . . IC 31-17-2-13 . . . and IC 31-17-2-15, means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Ind. Code § 31-9-2-67 (this statute was amended effective July 1, 2026, and is now codified at Ind. Code § 31-9-2.1-140).

[17]     The factor under subsection (2) of Ind. Code § 31-17-2-15 is of particular importance in making legal custody determinations. *Milcherska*, 56 N.E.3d at 641 (citations omitted). "Where 'the parties have made child-rearing a battleground, then joint custody is not appropriate.'" *Id*. at 642 (quoting *Periquet-Febres v. Febres*, 659 N.E.2d 602, 605 (Ind. Ct. App. 1995), *trans. denied*). "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Id*. (quoting *Swadner v. Swadner*, 897 N.E.2d 966, 974 (Ind. Ct. App. 2008)).

[18]     The record reveals that each of the parties testified that the other was to blame for their difficulties in communication and coming to an agreement regarding the main sticking point of their joint legal custody; namely, mental health counseling for Child. We think Father sums it up quite well in his brief by explaining that he believed "Mother was attempting to systematically cut him out of the decision of where the minor child would attend a counseling session" and Mother claimed that Father "communicated in an abusive way and actively tried to interfere in her efforts to set up the minor child with a new counselor." Appellee's Brief at 7-8. Be that as it may, the primary consideration for the trial court remains the best interests of Child, which the court here determined was served by continued joint legal custody. Contrary to Mother's suggestion, the evidence does not indicate a substantial change in subsection (2) of Ind. Code § 31-17-2-15, in that there is little evidence that Mother and Father have been unwilling and unable to communicate and cooperate in advancing Child's

overall welfare. The court found that the parties' historical lack of cooperation regarding Child's counseling specifically did not justify a change in legal custody when a "lack of counseling is certainly not significantly impairing Child's mental health," "Child is not in dire need of counseling," and "Ind. Code § 31-17-2-16 is a specific mechanism for judges to step in and get a child counseling as needed." Appellant's Appendix Volume III at 169-170. Mother's assertions on appeal are merely a request for this Court to reweigh the evidence, a task not within our prerogative on appeal. In light of the record presented and our standard of review, we cannot say that the trial court abused its discretion or clearly erred in denying Mother's petition to modify and request for sole legal custody of Child.

## II.

Mother maintains that the court's order that "[n]either party shall disparage the other parent to [Child's] new counselor," Appellant's Appendix Volume III at 170, is an "unconstitutional restraint on the parties' First Amendment right to freedom of speech." Appellant's Brief at 27. The First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const., amend. I. "A prior restraint is a term used to describe 'administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are about to occur.'" *WPTA-TV v. State*, 86 N.E.3d 442, 447 (Ind. Ct. App. 2017) (quoting *Alexander v. United States*, 509 U.S. 544, 550, 113

S. Ct. 2766 (1993)). "Restraining orders and injunctions that forbid future speech activities," such as non-disparagement orders, "are classic examples of prior restraints." *In re Paternity of G.R.G.*, 829 N.E.2d 114, 124 (Ind. Ct. App. 2005) (citation omitted).

[20] Mother cites our opinion in *Israel v. Israel*, 189 N.E.3d 170, 180 (Ind. Ct. App. 2023), *reh'g denied*, *trans. denied*, in support of her claim that the court's non-disparagement order is unconstitutional. In *Israel*, the husband argued that a non-disparagement clause in the court's final dissolution decree was an unconstitutional prior restraint of speech. *Israel*, 189 N.E.3d at 179. Specifically, the decree provided that the parties would not make disparaging comments about the other "in the presence of [Child], friends, family members, doctors, teachers, associated parties, co-workers, employers, the parenting coordinator, media, the press, or anyone." *Id*. at 175 (record citation omitted). The *Israel* court noted that "'[non-disparagement] orders are, by definition, a prior restraint on speech,'" which is a term describing "'administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are about to occur.'" *Id*. at 179 (citations omitted). A prior restraint on speech is not per se unconstitutional but "does come to a court 'bearing a heavy presumption against its constitutional validity.'" *Id*. (quoting *In re Paternity of K.D.*, 929 N.E.2d 863, 868 (Ind. Ct. App. 2010) (quoting *N.Y. Times Co. v. U.S.*, 403 U.S. 713, 714, 91 S. Ct. 2140, (1971))). A "prior censorship of expression can be justified only by the most compelling governmental interest." *Id*. at 180 (citation omitted).

[21] We observed that protecting children from exposure to disparagement between their parents is a compelling governmental interest that can justify certain carefully circumscribed speech restrictions. *Id*. (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S. Ct. 2613 (1982) (noting safeguarding the physical and psychological well-being of minors is a compelling state interest); *G.R.G.*, 829 N.E.2d at 125 (holding a non-disparagement order was constitutionally permissible where it furthered the best interests of the child)). Accordingly, our Court concluded that, to the extent the non-disparagement clause at issue prohibited each parent from disparaging the other in the child's presence, it furthered the compelling State interest in protecting the parties' child's best interests and did not violate the First Amendment. *Id*. However, we agreed with the husband that the clause at issue "goes far beyond furthering that compelling interest to the extent that it prohibits the parents from 'making disparaging comments' about the other in the presence of 'anyone' even when Child is not present." *Id*. (record citation omitted). Because that portion of the non-disparagement clause was an unconstitutional prior restraint on speech, this Court ordered it stricken from the parties' final decree. *Id*.

[22] Unlike the clause at issue in *Israel*, the non-disparagement clause here does not go far beyond a compelling governmental interest and prohibit each parent from disparaging the other in the presence of "anyone" even when Child is not present. Rather, the clause is narrowly tailored to prohibit each parent from

disparaging the other to a single individual; Child's new counselor.[7] Moreover, as noted above, in addition to protecting children from being exposed to disparagement between their parents, safeguarding the physical and psychological well-being of minors is a compelling governmental interest. As did the trial court in its order denying Mother's motion to correct error, we view Ind. Code § 31-17-2-16 as a codification of the compelling government interest of safeguarding the psychological well-being of minors in permitting the court to order counseling for a child under such terms and conditions as the court considers appropriate and in the child's best interests.

[23] In light of the trial court's findings that no allegation of abuse has ever been substantiated against Father, that Mother did not have "the best motivation" in making the recent revelation to Child's former therapist but instead used the counseling process "to gain an advantage in custody proceedings" and to "sow[] the seeds of discord," Appellant's Appendix Volume III at 159, 169, we agree with the trial court that in moving forward with court-ordered counseling for Child, allowing either parent to engage in "[w]eaponizing or poisoning the counseling process does not serve the best interests of the child." *Id*. at 222; *see*

---

[7] We observe that in *Campbell v. Campbell*, 250 N.E.3d 459 (Ind. Ct. App. 2024), this Court concluded that a non-disparagement clause which provided that "[n]either parent will disparage the condition of the other parent[']s[ ] home or the parenting skills or the lack thereof to medical providers, school personnel, coaches, etc., without a good faith basis that it is having an impact on either child's health" was "an unconstitutional prior restraint on speech that must be stricken." 250 N.E.2d at 478. We find the clause in *Campbell* distinguishable as a much broader restriction than the current clause which is narrowly tailored to restrict one type of communication to a single individual, i.e., Child's new counselor, upon evidence that one party had previously misused the counseling process.

*Matter of A.C.*, 198 N.E.3d 1,19 (Ind. Ct. App. 2022) (concluding that trial court's order restricting "the discussion of Child's transgender identity outside of family therapy does not violate the Parents' free speech rights" because the restriction was "narrowly tailored to address the State's compelling interest . . . in addressing Child's eating disorder and psychological health"), *reh'g denied, trans. denied*.   Under the circumstances presented, we cannot say reversal is warranted.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.


Altice, J., and DeBoer, J., concur.


ATTORNEY FOR APPELLANT

Rebecca M. Collins
Law Office of Rebecca M. Collins, Inc.
Plymouth, Indiana


ATTORNEY FOR APPELLEE

Alexander L. Hoover
Alexander L. Hoover & Associates, LLC
Plymouth, Indiana