## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2020, 11:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jessica R. Merino
J.Merino Law
Granger, Indiana

ATTORNEY FOR APPELLEE

Leonard J. Gullotta, II
Walker and Gullotta Law Office
Elkhart, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of E.G.C., Minor Child,

Lisa Jacobs (Click),

*Appellant*,

v.

Ryan Delagrange,

*Appellee*.

April 29, 2020

Court of Appeals Case No.
19A-JP-1519

Appeal from the Elkhart Superior Court

The Honorable David C. Bonfiglio, Judge

Trial Court Cause No.
20D06-1511-JP-425

**Brown, Judge.**

[1] Lisa Jacobs (Click) ("Mother") appeals the trial court's legal custody and parenting time order. Ryan Delagrange ("Father") requests appellate attorney fees. We affirm the court's order and deny Father's request for appellate attorney fees.

*Facts and Procedural History*

[2] E.G.C. was born on September 24, 2015. On January 27, 2016, the trial court issued an order establishing paternity. In February 2016, Father filed a petition to establish parenting time. On October 25, 2016, the court issued an agreed order that the parties have joint legal custody and Mother have primary physical custody subject to Father's parenting time in accordance with the Indiana Parenting Time Guidelines. The court appointed a guardian ad litem (the "GAL") in July 2017. Father filed a motion for rule to show cause in September 2017 alleging Mother changed her primary address and did not file a notice of intent to relocate. The GAL filed a report and supplemental report in October 2017.

[3] On November 7, 2017, the court held a hearing at which the parties appeared in person and by counsel, the GAL appeared, and Father's counsel recited an agreement into the record. According to the agreement, the paternal grandmother would provide daycare for the child, Mother would have custody until November 10, 2017, Father would then have custody until November 16, 2017, the parties would conduct a settlement conference on November 16, 2017, and if the parties could not reach an agreement at that time they would

have joint legal and physical custody or a shared custody arrangement until a trial was held. The court approved the agreement of the parties, and Father's counsel indicated he would submit an order for the court's approval.

[4] On December 22, 2017, Father filed a petition to modify custody requesting primary physical and sole legal custody of the parties' child. In February 2018, the court scheduled an evidentiary hearing for May 31 and June 1, 2018. The GAL filed a report in May 2018. The court entered an Agreed Order on June 4, 2018, which the parties signed, providing that Father was awarded primary physical custody of the parties' child subject to Mother's parenting time. It provided Mother would have parenting time on Tuesday after work and Thursday after work through Sunday every other week and on Wednesday after work through Friday morning on the alternating weeks. The Agreed Order further provided:

> [] Both parties['] "evidence" which was available at the time of the trial on May 31, 2018 and June 1, 2018 shall be admissible at future hearings until a Final Order from an Evidentiary Hearing is entered by the Court.
>
> [] The parties agree the standard of review of the court relative to modifying custody of [the child] shall be the best interest of [the child] and not a continuing and substantial change of circumstances.

Appellant's Appendix Volume II at 65.

[5] On August 31, 2018, Mother filed a motion to modify custody and parenting time and requested a hearing. On October 9, 2018, Father filed a motion for rule to show cause alleging Mother refused to comply with the court's order relative to paternal grandmother providing work-related daycare, failed to

honor his designation as the child's primary physical custodian, refused to comply with the child's primary physician's recommendations, and changed doctor appointments scheduled by Father. The same day, Father filed a petition to modify custody and parenting time requesting sole legal custody of the child and physical custody subject to Mother having parenting time pursuant to the Indiana Parenting Time Guidelines. The GAL filed a report in December 2018. On March 31, 2019, Mother filed an information for rule to show cause alleging Father did not request Medicaid information from her, refused to allow the child to receive dental care at the provider which had cared for child previously, and took the child to his dentist.

[6] On April 11, 2019, the court entered a Nunc Pro Tunc Order stating that a hearing had been held on November 7, 2017, at which the parties appeared in person and by counsel, Father's counsel recited an agreement into the record, and the parties agreed paternal grandmother would provide daycare and, if the parties were unable to reach an agreement, they would have joint legal and physical custody or a shared custody arrangement. The order indicated the court approved the agreement, both parents under oath stated they agreed to the court's orders at the hearing, Father's counsel indicated he would submit an order for the court's approval, and the order was never filed.

[7] On April 11 and 22, 2019, and May 24, 2019, the court held a hearing at which it heard testimony from the child's physician, a nurse practitioner, the GAL, Mother's mother, a former daycare provider, Father's mother, Father's wife, Mother, and Father. The parties presented numerous exhibits including

photographs of the child, many text messages between the parents, and Department of Child Services ("DCS"), medical, and financial records.

[8] On June 7, 2019, the trial court issued an order granting Father's motion to modify custody and parenting time and denying Mother's motion to modify custody and parenting time. The court found Mother in contempt based on Father's October 9, 2018 allegations, found Father in contempt based on Mother's March 31, 2019 allegations, and stated neither party was granted attorney fees and there were no sanctions. The order further provided:

> **Custody and Parenting Time**
>
> Some of the most compelling evidence in this case are the parents' unvarnished electronic communications with one another. At times the parents treated each other with mutual respect and even helpfulness demonstrating they are capable of mature behavior supportive of their child's needs. They are both young struggling adults trying to navigate parenthood and relationships. Through miscommunication, dishonestly [sic], power struggles and outright animosity for one another those electronic communication[s] also reveal the very worst elements of the parents. It is unfortunate that the worst of those elements dominate the parents' current high conflict relationship and adversely impact [the child]. It is a sad state of affairs with [the child] caught in the middle of their struggles.
>
> Overall. Father has the more stable record of employment, housing, consistently taking the child for medical/dental care and he has a stable relationship with his spouse. He has two other children with his spouse, [M.]. In addition, [M.] appears to be the most stable and capable of three caregivers; that is, Mother, Father and [M.].
>
> Father is granted sole legal custody and primary physical custody subject to Mother's parenting time pursuant to the Indiana Parenting Time Guidelines.

Father has made some efforts to co-parent; mother sabotages those efforts by confrontation, video taping and defensiveness. Father has been sarcastic and disrespectful to Mother, but less so, than Mother. If only these parents would choose the high road of cooperation and concern for their child's well-being, then [the child] would not be suffering in the manner she is today.

This is a judgment call based on the evidence and the manner in which the parents testified before the Court over a period of three days, sixty plus exhibits comprising hundreds of pages that were submitted and examined, as well as, video.

Mother is less stable as to employment, housing and she endangers the child by transporting her without proper child restraint devices on several occasions. She is also responsible for at least two years of the child being infested with lice. The child's experience with rashes are exacerbated by Mother's failure to observe proper hygiene and care. Mother has neglected the child's health care and dental needs and she appears responsible for poor diet and eating habits leading to severe dental health issues.

The parents unreasonably fight about such basic things as doctor appointments; therefore, placing one parent in charge of same, that being Father because he has a better track record of providing for her care and this order should reduce the chaos created over medical and dental care. To quote the GAL: "They can't agree on the day of the week it is, let alone agree on a dentist."

Mother has exposed the child to at least one potentially dangerous people [sic]; that being, James Parkhurst, Robbery (Armed or Bodily Injury) in 48D03[-]1010-FB-461.

Mother is consistently defensive when discussing issues with Father.

Mother falsely accused Father in [a DCS] referral of inflicting harm and neglecting [the child].

Just as severe is the emotional damage Mother inflicts on the child by inciting the child when transitioning between parents. Mother utterly fails to properly support transition to Father's care. Mother creates a hostile atmosphere between the parties by video recording exchanges. Mother

completely failed to attempt to sooth[e] the child in [her] hysterical reaction to the exchange on the video admitted into evidence. Mother routinely strips the child and photographs every bump and bruise [she] may sustain. It is more important to Mother to gain evidence against Father to sustain and win litigation than to care for the needs of the child.

Mother overplays and exaggerates the conditions in Father's home. Father's child, a two year [old] has had some "biting" issues. Father explains that [the parties' child] teases him and takes away his toys. Those issues appear to have been addressed by Father and his wife and they are on guard and they are ordered to provide vigilant parental supervision. Both situations are resolved with constant supervision. When parents are on notice there is a problem, they have to be vigilant in their supervision.

Father also avails himself of his camera to document lice at every turn, but not to the extent that Mother uses video to record crisis in [the child's] life.

All communication between the parents except for true emergency situations are ordered made through Our Family Wizard. Another exception is at child exchanges; the Court orders no video or other recording of the child exchanges. At the exchanges the parents are ordered to be pleasant with one another and they are ordered to exchange common pleasant greetings that their child is able to hear. Examples being: "Hello" "How Are You" "Nice to See You." During such exchanges they should attempt to "smile" at one another so that [the child] can see the smile. Each parent [is] ordered to be verbally supportive of the child and encourage the child to engage with the other parent in a positive manner. Example: "[E.G.C.] have fun with daddy/mommy." These orders are issued because the parents need such basic instruction.

Parents ordered to not make negative or derogatory statement about the other parent or allow anyone else to make derogatory statements about the other parent within the hearing of [the child].

Parents ordered to provide [the child] with therapeutic intervention with Jennifer Miller.

* * * * *

They are ordered to make an appointment with her within seven days of this order. They are ordered to keep that appointment and all subsequent appointments. The Parents are ordered to cooperate with that treatment process and to participate in therapy with [the child] or individually or together without [the child] as the therapist directs. They are further ordered to be involved in any and all other therapeutic services directed by Jennifer Miller or any other therapists involved in her treatment or treatment they receive. GAL to contact therapist with background information needed for therapy. Mother reports self-harming, night terrors and tantrums. It is unknown after three days of courtroom evidence if these are induced, aided and directed by Mother in order to make Father look bad to win her case or systemic problems. On the other hand, the high conflict between the parents may be the root of the problem. In any regard, [the child] needs help and she needs peace in her life between her parents.

The Court has fashioned these orders with the goal of minimizing the harm to [the child], provide her with coping skills and force the parents to change their ways. The court finds the modification is in [the child]'s best interest because they address her physical and emotional needs and although the parents[] agreed that substantial change in circumstance is not required there does exist substantial change in circumstance. [The child] has come into harms' way both physically and emotionally in Mother's care and that exposure must be limited for her wellbeing.

Child Support issues referred to the Title IV-D court . . . .

*Id*. at 39-42.

## Discussion

### I.

[9] Mother claims the trial court abused its discretion in granting sole legal custody. Where a trial court enters findings of fact and conclusions, we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct.

App. 2011). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id*.

[10] Mother argues that, while the trial court based its decision on evidence presented over three days, the majority of the evidence related to matters prior to the last custody proceeding, that evidence of the child's rashes is the only evidence qualifying as harm arising after the last proceeding, and "[t]he discourse around [the child's] rashes amounts to nothing more than lack of cooperation between the parties due to strong opinions." Appellant's Brief at 20.

[11] Father responds that the court acted within its discretion in awarding him sole legal custody and points to the court's findings related to the parties' electronic communications and inability to agree on anything, Mother's actions to sabotage Father's efforts to co-parent, and the parents' unreasonable fights about doctor appointments. He argues the court considered three days of testimony, the manner in which the parties testified, and the GAL's testimony and recommendation that he be awarded sole legal custody. He also argues that the parties entered into an agreed order expressly providing that evidence available for the hearing scheduled for May 31 and June 1, 2018 would be admissible at later hearings, there was no custody proceeding heard by the court on May 31 or June 1, 2018, and Mother did not object to the admission of his evidence.

[12]　We generally review custody modifications for an abuse of discretion with a preference for granting latitude and deference to trial courts in family law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002); *Gonzalez v. Gonzalez*, 893 N.E.2d 333, 335 (Ind. Ct. App. 2008). We set aside the trial court's ruling only if it is clearly erroneous and will not substitute our own judgment if any evidence or legitimate inferences support the court's ruling. *See Kirk*, 770 N.E.2d at 307. On appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion asserted by the appellant before there is a basis for reversal. *Id.*

[13]　Ind. Code § 31-14-13-6 provides the court may not modify a child custody order unless modification is in the best interests of the child and there is a substantial change in one or more of the factors under Ind. Code § 31-14-13-2 and, if applicable, Ind. Code § 31-14-13-2.5. Ind. Code § 31-14-13-9 provides that, in a proceeding for a custody modification, the court may not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described in Ind. Code §§ 31-14-13-2 and -2.5. The factors in Ind. Code § 31-14-13-2 include: (1) the age and sex of the child; (2) the wishes of the child's parents; (3) the wishes of the child; (4) the interaction and interrelationship of the child with the child's parents and siblings and any other person who may significantly affect the child's best interest; (5) the child's adjustment to home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or

family violence by either parent; and (8) evidence the child has been cared for by a de facto custodian.

[14] Ind. Code § 31-14-13-2.3(a) provides "the court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child." Ind. Code § 31-14-13-2.3(c) provides the court shall consider:

> (1) the fitness and suitability of each of the persons awarded joint legal custody;
>
> (2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;
>
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
>
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;
>
> (5) whether the persons awarded joint legal custody:
>
> > (A) live in close proximity to each other; and
> > (B) plan to continue to do so;
>
> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and
>
> (7) whether there is a pattern of domestic or family violence.

"'Joint legal custody', for purposes of IC 31-14-13 . . . means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Ind. Code § 31-9-2-67.

[15]     The second factor above regarding willingness and ability to communicate and cooperate in advancing the child's welfare is of particular importance in making legal custody determinations. *See Milcherska v. Hoerstman*, 56 N.E.3d 634, 641 (Ind. Ct. App. 2016). Where the parties have made child-rearing a battleground, joint custody is not appropriate. *Id*. at 642. "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents." *Id.* (citation omitted). The primary concern of the courts with respect to legal custody is the welfare of the children and not the wishes of the parents. *See Carmichael v. Siegel*, 754 N.E.2d 619, 635 (Ind. Ct. App. 2001).

[16]     To the extent Mother does not challenge the court's findings of fact, the unchallenged facts stand as proven. *See In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (failure to challenge findings by the trial court resulted in waiver of the argument that the findings were clearly erroneous), *trans. denied*. We observe the Agreed Order on June 4, 2018, was signed by the parties, addressed physical custody and Mother's parenting time, and provided that evidence which was available at the time of the May 31 and June 1, 2018 hearings, which were cancelled, would be admissible at later hearings until a final order was entered.

[17]     The trial court found the most compelling evidence was the parents' unvarnished electronic communications with each other, referenced their miscommunication, dishonesty, power struggles, and outright animosity for each other, and found the

parents' high-conflict relationship adversely impacted the child. The court found Father has a more stable record of employment, housing, and consistency in providing medical care and Mother is less stable as to employment and housing and exacerbated the child's rashes by failing to observe proper hygiene. It further found Father has made some efforts to co-parent and Mother sabotages those efforts, Mother is consistently defensive when discussing issues with Father, and she fails to properly support the transitions to Father's care and creates a hostile atmosphere. The court found the parents unreasonably fight about such basic things as doctor appointments and that its order should reduce the chaos created over medical and dental care. The court noted that its decision was based on the evidence and the manner in which the parents testified. The GAL recommended that Father be awarded sole legal custody of the child. Based on the record and in light of the parties' history of non-cooperation and high level of contentiousness, we cannot say the court abused its discretion in granting Father sole legal custody of the parties' child.

## II.

[18] Mother next asserts the trial court abused its discretion by reducing her parenting time and argues Father failed to show the parenting time schedule endangered the child's physical health or was causing impairment to her emotional development. Father asserts the court made specific findings as to how the child came into harm's way physically and emotionally while in Mother's care, determined it was in the child's best interest to limit her

exposure to Mother, and properly ordered that Mother exercise standard parenting time pursuant to the Indiana Parenting Time Guidelines.

[19] The Indiana Supreme Court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). Appellate deference to the determinations of trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). When a trial court has made findings of fact, we determine whether the evidence supports the findings and whether the findings support the court's conclusions. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction a mistake has been made. *Id.*

[20] Decisions involving parenting time rights under the paternity statutes are committed to the sound discretion of the trial court. *In re Paternity of W.C.*, 952 N.E.2d 810, 815 (Ind. Ct. App. 2011); *see also* Ind. Code § 31-14-14-1 ("A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly impair the child's emotional development."). When reviewing the trial court's decision, we neither reweigh the evidence nor reexamine the credibility of the witnesses. *In re Paternity of W.C.*, 952 N.E.2d at 816.

The trial court entered findings regarding the contentious history between the parents, Mother's care for the child, and Mother sabotaging Father's efforts to co-parent and failing to support transitions to Father's care. The court found the modification was in the child's best interest and awarded Mother parenting time pursuant to the Indiana Parenting Time Guidelines. Under these circumstances, and keeping in mind our deference to trial courts in family law matters, we cannot say we are left with a firm conviction a mistake has been made or the trial court's decision is clearly erroneous.

### III.

Mother also asserts that she was held in contempt of an order never placed on the record. Father argues the parties were present with counsel at the November 7, 2017 hearing at which Mother under oath confirmed the parties' agreement and the court subsequently issued a *nunc pro tunc* order to which Mother did not object.

It is soundly within the discretion of the trial court to determine whether a party is in contempt. *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016). We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. *Id.* The trial court has the inherent power to maintain its dignity, secure obedience to its process and rules, rebuke interference with the conduct of business, and punish unseemly behavior. *Id.*

Indiana has codified the procedural requirements for finding indirect contempt at Ind. Code § 34-47-3-5, which provides in part that the person charged is

entitled "to be served with a rule of the court against which the contempt was alleged to have been committed." *Reynolds*, 64 N.E.3d at 832 (citing Ind. Code § 34-47-3-5(a)). Strict compliance with the statute may be excused if it is clear the alleged contemnor had clear notice of the accusations against her. *See id*. at 833 (citations omitted).

[25] Here, we are satisfied Mother's rights were preserved. Father alleged in October 2019 that Mother had not complied with the court's order that paternal grandmother provide work-related daycare, did not honor the order that he had primary physical custody, and changed doctor appointments scheduled by Father. The record reveals the parties appeared in person and with counsel at the November 7, 2017 hearing at which an agreement was recited into the record, and the court's subsequent *nunc pro tunc* order indicated both parties had stated under oath they agreed to the court's orders and had agreed that paternal grandmother would provide daycare and that, if they were unable to reach an agreement by November 16, 2017, they would have joint legal and physical custody until a hearing was held. The court's June 4, 2018 order awarded Father primary physical custody. Mother does not demonstrate that she did not have notice of the rule of the court against which the contempt was alleged to have been committed. We also observe the trial court did not impose any sanction. We do not find an abuse of discretion.

IV.

Father requests appellate attorney fees, arguing Mother's appeal is unreasonable. This Court is authorized to assess damages if an appeal "is frivolous or in bad faith," and such damages "shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Bessolo v. Rosario*, 966 N.E.2d 725, 734 (Ind. Ct. App. 2012), *trans. denied*. To prevail on his request, Father must show that Mother's arguments on appeal are "utterly devoid of all plausibility." *See id.* While we do not disturb the trial court's order, we cannot say Mother's arguments on appeal are utterly devoid of all plausibility or that an award of appellate attorney fees is appropriate.

[26] For the foregoing reasons, we affirm the trial court's order and deny Father's request for appellate attorney fees.

[27] Affirmed.

Najam, J., and Kirsch, J., concur.